Richardson, Ch. J.,
delivered the opinion of the court:
This case is before the court upon transmission by the Secretary of War, as specified in his letter of transmittal “for its action under section 1063 of the Revised Statutes of the United *173 States, or under such other statute as the court may deem applicable.”
There are three acts of Congress by virtue of which the heads of Departments may transmit cases to this court, and they differ materially from each other. The first question, then, to be determined is, under which act the case is to be proceeded with. They are as follows :
“ Be vised Statutes, sec. 1063. Whenever any claim is made against any Executive Department, involving disputed facts or controverted questions of law, where the amount in controversy exceeds three thousand dollars, or where the decision will affect a class of cases, or furnish a precedent for the future action of any Executive Department in the adjustment of a-class of cases, without regard to the amount involved in the particular case, or where any authority, right, privilege, or exemption is claimed or denied under the Constitution of the United States, the head of such Department may cause such claim, with all the vouchers, papers, proofs, and documents pertaining thereto, to be transmitted to the Court of Claims, and the same shall be there proceeded in as if originally commenced by the voluntary action of the claimant; and the Secretary of the Treasury may, upon the certificate of any .Auditor or Comptroller of the Treasury, direct any account, matter, or claim, of the character, amount, or class described in this section, to be transmitted, with all the vouchers, papers, documents, and proofs pertaining thereto, to the said court, for trial and adjudication: Provided, That no case shall be referred by any head of a Department unless it belongs to one of the several classes of cases which, by reason of the subject-matter and character, the said court might, under existing laws, take jurisdiction of on such voluntary action of the claimant.”
“ Bowman Act, oe March 3,1883, ch. 116., 22 Stat. L., 505, sec. 2. That when a claim or matter is pending in any of the Executive Departments which may involve controverted questions of fact or law, the head of such Department may transmit the same, with the vouchers, papers, proofs, and documents pertaining thereto, to said court, and the same shall be there proceeded in under such rules as the court may adopt.
“When the facts and conclusions of law shall have been found, the court shall not enter judgment thereon, but shall report its findings and opinions to the Department by which it was transmitted for its guidance and action.”
“Act oe March 3,1887, ch. 359, 24 Stat. L., 505, sec. 12. That when any claim or matter may be pending in any of the Executive Departments which involves controverted questions of fact or law, the head of such Department, with the consent of the claimant, may transmit the same, with the vouchers, papers, *174 proofs, and documents pertaining thereto, to said Court of Claims, and the same shall be there proceeded in under such rules as the court may adopt. When the facts and conclusions of law shall have been found, the court shall report its findings to the Department by which it was transmitted.”
It will be seen that section 1063 of the Revised. States, in connection with sections 1064 and 1065, which it is not necessary to repeat here, embraces only cases in which there is a claim for money such as the court may take jurisdiction of on the voluntary petition of the claimant, and in which a judgment may be entered against the United States.
The controversy disclosed between Major Billings and the officers of the Treasury Department, as shown by the findings, involves the right of that officer to mileage while traveling in Europe, under orders from the W ar Department, as a delegate to the International Medical Congresses held in London in 1881 and 1884.
As the expenses have actually been paid to him and the Second Comptroller is only seeking, through the intervention of the Secretary of War, to recoup the amount from the future salary which may become due him as an officer of the Army, it is clear that he could not be a claimant for judgment against the United States in this matter, either by voluntary petition or under the provisions of Revised Statutes, section 1063, and that there is no claim which could be transmitted under that section.
Under section 12 of the act of March 3,1887, claims or matters can be transmitted only with the consent of the claimant, and when so transmitted this court finds the facts and its conclusions of law and reports the same to the Department by which they were transmitted, and there is no direction in the act as to the force and effect of such a report when it reaches the Department. The present case does not come under that act, because it does not appear that it was transmitted with the consent of the claimant.
Section 2 of the act of March 3,1883, commonly called the Bowman Act, differs from section 12 of the act of 1887, in that it does not require the consent of the claimant to the transmission ; that the head of a Department may exercise the power therein conferred of his own motion; and that the report, when made to the Department, is for its guidance and action.
*175 Because, therefore, the Secretary of War elected to transmit the matter to this court of his own motion, without reference to the consent of any claimant, we take jurisdiction under the Bowman Act, and shall proceed as therein required.
What, then, are the controverted questions of fact or law involved in the matter pending in the War Department which is thus transmitted %
The Second Comptroller reported to the Paymaster-General that Major Billings was “in arrears to the United States in the sum of $2,185.92 on account of erroneously-paid mileage from Washington, D. 0., to sundry places in Europe and return (two trips in 1881 and one in 1884), by Major Smith, on voucher paid December 19, 1881, and by Maj. J. B. Boche on voucher paid October 3, 1884.”
The Paymaster-General notified said Billings of the fact, and the latter officer appealed to the Secretary of War under the following paragraphs of the Army Begulations (A. D. 1881):
“2445. When by report of the Second Comptroller of the Treasury, or of any Bureau of the War Department, it is ascertained that an officer of the Army has been overpaid, or is indebted to the United States for money, property, or supplies, or has failed properly to account for the same, the Paymaster-General will notify the officer of the charge.
“ If refundment or satisfactory explanation benot made within a reasouable time, the Paymaster-General will, on the order of the Secretary of War, give notice or the stoppage of the officer’s pay until the overpayment or indebtedness is satisfied. Should the officer in his explanation appeal to the Secretary of War, the Paymaster-General will submit the case for decision before enforcement of the stoppage.”
Whether or not the Secretary of War should order the Paymaster-General to give notice under these regulations of the stoppage of Major Billings’s pay until the overpayments alleged by the Second Comptroller shall be satisfied, is a matter wholly within the discretion of the Secretary. The regulations do not require such notice except upon the decision and order of the Secretary of War, who, it would seem, is expected to investigate the matter and to do what he deems best for the service. Nor does section 1766 of the Bevised Statutes, to which reference has been made by counsel, impose any such obligation upon him, but does provide a different course of procedure in cases where officers are in. arrears to the United *176 States. In matters of discretion this court expresses no opinion.
Involved, however, in this case, in the matter calling for the exercise of his discretion and decision, the Secretary finds controverted questions of law arising.upon the rulings of the Second Comptroller as to which he seeks the conclusions and opinions of the court before acting himself, and to those he is entitled by law, under the Bowman Act. These rulings are as follows:
“ First. The War Department had no authority to send a delegate to the International Medical Congress at London at the Government expense. Congress could alone determine the propriety of such a representation. It was in no proper sense a military service, or a service which the military establishment was required to render.
“ Second. The International Congress which Surgeon Billings was directed to attend did not meet until August, 1881, and he was not authorized by the order to leave Washington two months in advance and spend the intervening time in travel elsewhere.
“ Third. An order to travel must specifically designate the place or places from which, and the point or points to which, the travel is to be performed. It-can not be left to the officer who makes the trip to determine its extent or the places to be visited. The commanding officer must decide upon the necessity of the travel and fix the limits in the order.”
In our opinion the Comptroller erred in each one of these rulings.
' By section 2 of article 2 of the Constitution the President is made Commander-in-chief of the Army and of the Navy of the United States.
Section 216 of the Bevised Statutes provides that—
“ Sec. 216. The Secretary of War shall perform such duties as shall from time to time be enjoined or intrusted to him by the President relative to military commissions, the military forces, the warlike stores of the United States, or of other matters respecting military affairs; and he shall conduct the ■ lousiness of the Department in such manner as the President shall direct.”
The orders of the Secretary of War, and other officers subordinate to him, acting by his authority, in the business of the Department, are presumed to have been issued in the manner directed by the President, except when subject to special regulations of statute law, or where duties of a personal or judicial *177 character are entrusted to the President, as in the approval or disapproval of the findings of a court-martial as held in Munkle’s Case (122 U. S. B., 514). It has been so decided in several adjudicated cases (Wilcox v. Jackson, 13 Pet., 498; United States v. Eliason, 16 Pet., 291; The Confiscation Cases, 20 Wall., 109. See also Parish's Case, 100 U. S. R, 500: McCullom’s Case, 17 C. Cls. R., 101).
The act of July 24, 1876, chapter 226, section 2 (Suppl. Bev. Stat., § 232), provides that—
“When an officer [of the Army] travels under orders and is not furnished transportation by the Quartermaster’s Department, or on a conveyance belonging to or chartered by the United States, or on any railroad on which the troops and supplies of the United States are entitled to be transported free of charge, he shall be allowed 8 cents a mile, and no more, for each mile actually traveled under such order, distances to be calculated by the shortest usual traveled route. * * *”
The President himself, or through the War Department, may ■direct the movements of all officers of the Army, and to whatever place, and on whatever business connected with the military service he may order them to proceed they are bound to ■obey, at least when such order is not forbidden by law; and in •such case the officer is, under the statutes, entitled to mileage. The Medical Department of the Army is an important branch of the service, and its officers are as much subject to the orders ■of the President as are any other officers of the Army. The business on which Major Billings was ordered to travel was connected with the department to which he belonged, and the President deemed it for the interest of that service that he should perform the prescribed duty.
In the general conduct of the business of the Government much is left to the discretion and judgment of the President and the heads of the Executive Departments. In United States v. Macdaniel (7 Pet., 1, 14, 15), Mr. Justice McLean, delivering the unanimous opinion of the court, said:
“A practical knowledge of theaction of any one of the great departments of the Government must convince every person that the head of a department, in the distribution of its duties and responsibilities, is often compelled to exercise his discretion. He is limited in the exercise or his powers by the law; but it does not follow that he must show a statutory provision for •everything he does. No government could be administered on *178 such principles. To attempt to regulate by law the minute movements of every part of the complicated machinery of government would evince a most unpardonable ignorance on the subject. Whilst the great outlines of its movements may be marked out, and limitations imposed on the exercise of its powers, there are numberless things which must be done that can neither be anticipated nor defined, and which are essential to the proper action of the Government. * * *
“ It would be a novel principle to refuse paymentto the subordinates of a department because their chief, under whose direction they had faithfully served the public, had mistaken his own powers and had given an erroneous construction of the law.”
In Depan v. Olney (1 Curtis, Circuit C. R., 306, 309) Mr. Justice Curtis thus referred to the duty of a military officer to obey orders:
“ If he receives an order from his superior which, from itS' nature, is within the scope of his lawful authority, and nothing appears to show that that authority is not lawfully exerted in the particular case, he is bound to obey it; and if it turns out that his superior had secretly abused or exceeded his power, the superior, who is thus guilty, must answer for it, and not the inferior, who reasonably supposes he was doing only his duty.”
In 1851 the Secretary of War had decided that certain officers of the Army had command according to their brevet rank, and the Comptroller had refused to allow them pay accordingly. The Attorney-General (Mr. Crittenden) was asked by the Secretary of War, u Whose decision is to govern in this matter, that of the head of this Department or that of the Comptroller?” Mr. Crittenden, in his reply, said: “ Whatever may be the legal perquisites of brevet commanders, their existence is to be presumed from the order or decision of the Secretary of War assigning or determining those commands. That being a legal presumption, is conclusive, and the fact must be regarded by the Auditor and Comptroller as established by and according to your decision and orders. Acts done within the peculiar end legitimate sphere of your official duty are to be taken and understood as rightly done, and to preclude all collateral inquiry by accounting officers.” (5 Opin. Attys. Gen., 386, 387-See also JEartsorn’s Oase, 21 O. Cls. R., 453.)
It is not for the accounting officers to inquire into the reasons, nor to take exceptions to the expediency and wisdom of the orders of the President or a Department, when issued within the general scope of their authority.
*179 It was said by the Supreme Court in United States v. Jones (18 Howard, 96)—
“The accounting officers of the Treasury have not the burden of responsibility cast upon them oí revising the judgments, correcting the supposed mistakes, or annulling the orders of the heads of Departments.”
This paragraph was cited with approval by the Supreme Court in the recent case of United States v. Johnston (124 U. S. R., 236, 262).
If there were any doubt of the authority of the War Department to order Major Billings to travel abroad on the public business intrusted to him, the long-continued practice of sending officers abroad on like business, and of paying their mileage from the Treasury through the accounting officers-, without objection, as shown in Finding VI, would be a strong-reason for upholding j:he legality of such orders. But we do not think the question admits of doubt. The orders were legal, and can not be controverted by any other executive branch of the Government. (Brown's Case, 18 C. Cls. R., 544, affirmed on appeal, 113 U. S. B., 568: Hahn’s Case, 14 C. Cls. R., 305, affirmed on appeal, 107 U. S. R., 402; Stuart v. Laird, 1 Crunch, 299.)
It is suggested that by section 191 of the Bevised Statutes, reproduced from the act of March 30, 1868, the Secretary of War is concluded by the decision of the accounting officers of the Treasury. The section is as follows :
“ Sec. 191. The balances which may from time to time be-stated by the Auditor and certified to the heads of Departments - by the Commissioner of Customs, or the Comptrollers of the-Treasury, upon the settlement of public accounts, shall not be> subject to be changed or modified by the heads of Departments, but shall be conclusive upon the executive branch of the Government, and be subject to revision only by Congress or the proper courts. The head of the proper Department, before signing a warrant for any balance certified to him by a Comptroller, may, however, submit to such Comptroller any facts in his judgment affecting the correctness of such balance, but the decision of the Comptroller thereon shall be final and conclusive, as hereinbefore provided. (1868, March 30, ch. 36, 15 Staf. L., 54.) ” ' ’
This section relates only to matters of accounting in the Treasury Department, and of ascertaining the balance in each particular account which shall be drawn from the Treasury *180 upon a warrant signed i>y the Secretary and countersigned by tlie First Comptroller (Rev. Stat., § 248), or upon requisition from the heads of other Departments (Rev. Stat., § 3673).
In the interpretation of a statute the circumstances which led to its enactment and the mischief to be remedied, when they can reasonably be presumed, may be taken into consideration.
Before the enactment of the provisions of that section it had been the practice, of the President and the heads of Departments to interfere and give directions to the accounting officers in the matter of settling accounts, and to change or attempt to change the balances stated by them either by striking out items allowed or by allowing items rejected. The accounting officers resisted the practice, and fhe controversy, in different forms, was several times referred to the Attorney-General, who advised that the President was without such authority, but that the heads of Departments, especially ’ the Secretary of the Treasury, did have the power from the nature and general duties of their offices. (1 Op. Atty. Gens., 624,678, 705; 2 ib., 303, 652 ; 5 ib., 87, 630.)
The act was passed apparently to settle conclusively that long standing controversy between executive officers and to prevent the interferences of others in the settlement of accounts by the accounting officers. (McKees’ Case, 12 C. Cls. R., 554.) It makes conclusive upon the executive branch of the Government only the “ balances ” stated by the latter officers and their “ decision _ thereon,” for the purpose of determining for what amounts, if any, warrants may be drawn on the Treasury. The last part of the section shows that the conclusiveness is confined to the matter of drawing warrants or requisitions for such balances. (Lougwill's Case, 17 C. Cls. R., 291.) It does not make such decisions conclusive upon the head of a Department in the exercise of his discretion as to orders to be issued to his subordinates in such connections as the one now under consideration.
It may be noted that the word “ requisition ” is implied in the section after the word “ warrant,” for it is only the Secretary of the Treasury who draws warrants on the Treasury; the other heads of Departments make requisitions upon the Secretary of the Treasury, who, in connection with the Comptrollers, draws the warrants. (Rev. Stat., §§ 248, 269, 3673.)
*181 In the present case the matter pending before the Secretary of War does not relate to the drawing of a requisition by him nor the changing of any balance stated by the accounting officers. Whatever decision he may reach will not interfere with the action of those officers, who may proceed as provided in section 269, paragraph 4, and section 1766 of the Revised Statutes.
The clerk will transmit a copy of the foregoing findings of fact, conclusions of law, and opinion to the Secretary of War for his guidance and action.