Richardson, Ch. J.,
delivered the opinion of the court:
The material allegations of the petition are: That the claimant, having been a duly appointed clerk in the Department of *518 Justice on and previously to March 31, 1883, was on that day informed by the Attorney-General that there was no appropriation from which to pay him for further services in the capacity of clerk.
That thereupon the Attorney-General in person requested him, as an expert accountant, which he then and there was, to render services as such expert accountant in the matter of accounts for detecting and punishing violations of the intercourse acts of Congress and frauds committed in the Indian service, and in other matters of the same general character, and involving examination of accounts of the disbursing clerk of the Department of Justice, all of said accounts being then much in arrears.
That in accordance with said request the claimant on the same day entered upon the examination of said accounts and continued diligently in the performance of his duties as an expert accountant for twenty-seven days, when upon application for payment he was informed that the Department had no appropriation available therefor.
That his services were reasonably worth $ 150, and no objection was made by the Attorney-General to the amount of the charge, but the same was admitted to be correct in amount.
That the statement that the Department had no appropriation available for the payment was given. by the Attorney-General in mistake of law and fact, as there was at date of employment an appropriation of $5,000 for punishing violations of the intercourse acts and frauds, to be expended under the direction of the Attorney-General, and in the examination of the accounts concerning which of the intercourse acts and frauds committed in the Indian service the claimant had been engaged for said twenty-seven days, and the $5,000 appropriated for that purpose had not been expended at that date, and has not yet been expended to within one thousand dollars or more.
For authority in the Attorney-General to employ an expert accountant in the service and during the time of this employment the claimant relies upon the following provision and appropriation in the “ act making appropriations for sundry civil expenses of the Government for the fiscal year ending June thirtieth, eighteen hundred and eighty-three, and for other *519 purposes,” passed August 7, 1882. Chapter 433, (22 Stat. L., 303, 335):
“ For punishing violations of the intercourse acts and frauds; for detecting and punishing violations of the intercourse acts of Congress, and frauds committed in the Indian service, the same tobe expended by the Attorney-General in allowing such fees and compensation to witnesses, jurors, marshals, and agents, and in defraying other expenses as may be necessary for this purpose, five thousand dollars.”
If this were the only statute involved in the controversy the claimant’s contention, to say the least, would have strong support ou principle and authority on the alleged ground that where Congress intrusts to a public officer the expenditure of a sum of money for a designated purpose, without restriction or limitation as to details, the exercise of the judgment and discretion of such officer can not be reviewed by the accounting officer or the courts for the mere purpose of determining whether or not the authority was exercised in the most judicious manner. If the officer acts in good faith, keeps within the general scope and authority of the law, and does not undertake to apply the money to other and wholly different purposes from those designated in the act of appropriation, his action can not be questioned in the final settlement of the accounts, especially as against an innocent employé, who, though bound by the law, has no discretion to exercise over the propriety of orders of his employer. ■ (Gratiot v. United States, 4 Howard, 80, 114; United States v. McDaniel, 7 Pet., 1; United States v. Fillebrown, 7 Pet., 28; Gaines v. Thompson, 7 Wall., 351, 352, 353; FitzpatricWs Case in the 20 percent, cases, 13 Wall., 568, 576; Dunwoody v. United States, 22 C. Cls. R., 269, 280, 281; Billings’s Case, 23 C. Cls. R., 166, 171.)
But Congress, at the very same session at which the act upon which the claimant relies was passed, enacted very stringent prohibitions against the employment of clerks and others in the Executive Departments, at Washington, beyond those specially appropriated for, as will be seen from the following section of the act rnakiug appropriations for the legislative, executive, and judicial expenses of the Government for the fiscal year ending June thirtieth, eighteen hundred and eighty-three, and for other purposes,” approved August 5, 1882. Chap. 389, (22 Stat. L., 255).
*520 “ Sec. 4. That no civil officer, clerk, draughtsman, copyist, messenger, assistant messenger, mechanic, watchman, laborer, or other employé shall after the first day of October next be employed in any of the Executive Departments, or subordinate bureaus or offices thereof at the seat of Government, except only at such rates and in such numbers, respectively, as may be specifically appropriated for by Congress for such clerical and other personal services for each fiscal year.
“ And no civil officer, clerk, draughtsman, copyist, messenger, assistant messenger, mechanic, watchman, laborer, or other employé shall hereafter be employed at the seat of Government in any Executive Department or subordinate bureau or office thereof, or be paid from any appropriation made for contingent expenses, or for any specific or general purpose, unless such employment is authorized and payment therefor specifically provided in the law granting the appropriation, and then only for services actually rendered in connection with and for the purposes of the appropriation from which payment is made, and at the rate of compensation usual and proper for such services.
u And after the first day of October next, section one hundred and seventy-two of the Revised ¡Statutes, and all other laws and parts of laws authorizing the employment of officers, clerks, draughtsmen, copyists, messengers, assistant messengers, mechanics, watchmen, laborers, or other employés at a different rate of pay or in excess of the number authorized by appropriations made by Congress, be, and they are hereby, repealed.
“ And thereafter all details of civil officers, clerks, or other subordinate employés, from places outside of the District of Columbia for duty within the District of Columbia, except temporary details for duty connected with their respective offices, be, and are hereby, prohibited; and thereafter all moneys accruing from lapsed salaries, or from umised appropriations for salaries, shall be covered into the Treasury.”
The purpose of Congress in these provisions can not be mistaken. It is to deprive officers of the Government of all authority to employ in any of the Executive Departments at the seat of Government or in the subordinate bureaus or offices thereof eivil officers, clerks, draughtsmen, copyists, messengers, assistant messengers, mechanics, watchmen, laborers, or other employés, except such as may be specifically appropriated for by Congress. The second paragraph, as above quoted, makes the same prohibition against the employment of such persons at the seatof Government to be paidfrom appropriations for specific as well as general purposes, apparently with) the view of avoiding the very interpretation of specific appropriation here relied *521 upon by the claimant. The last paragraph, as above quoted, goes still further in the same direction, and to prevent evasions of the law prohibits the detail of such officers and employés from places outside of the District of Columbia for duty within the District, except temporary details for duty in connection with their offices.
The same act, in section 1, makes some provisions as exceptions to those of section 4, which go far to still further show that Congress intended to make the general prohibition apply to appropriations for specific purposes like the one on which this action is founded. These exceptions apply to certain specific appropriations under the control of the Secretary of the Treasury and the Secretary of War. They are as follows:
“And the services of skilled draughtsmen, civil engineers, computers, accountants, modelers, assistants to the photographer, copyists, and such other services as the Secretary of the Treasury may deem necessary, may be employed in the office of the Supervising Architect to carry into effect the various appropriations for public buildings, to be paid for from such appropriations: Provided, * * that the Secretary of the Treasury shall each year, in the annual estimates, report to Congress the number of persons so employed and the amount paid to each. (22 Stat. L., 226.)
“ Nothing in section four of this act shall be construed to prevent the employment of ¡íuch number of the five hundred enlisted men of the Signal Corps in the office of the Chief Signal Officer, at Washington, as the Secretary of War may direct. (22 Stat. L., 239.)
“ The services of skilled draughtsmen, civil engineers, and such other services as the Secretary of War may deem necessary, may be employed in the office of the Chief of Engineers, to carry into effect the various appropriations for rivers and harbors, fortifications, and surveys of military defenses to be paid for from such appropriations: Provided, * * that the Secretary of War shall each year, in the annual estimates, report to Congress the number of persons so employed and the amount paid to each. (22 Stat. L., 240.) ”
These prohibitions against the employment of persons in Washington beyond specific appropriations therefor were binding on the Attorney-General and on the claimant alike. The former had no discretion in the matter, and the latter was bound to know the law and the illegality of his employment. The provisions went into operation, none of them later than October 1,1882, and the service of the claimant was performed *522 in April, 1883, so that, in point of time, they directly apply to his case.
The petition does not expressly set out that the employment was for service in Washington, but it does contain allegations from which that fact, we think, may be conclusively inferred. If we are mistaken, and the employment was outside of the seat of G-overnment, the claimant can amend his petition and then present a different case.
The judgment of the court is that the demurrer be sustained, and that the petition be dismissed on its merits, with leave for the claimant, if he elects to amend his petition, to file a motion before December next to set aside the judgment for that purpose. (Kule 36.)