Mr. Justice Strong-
delivered the opinion of the court:
This case depends for its solution upon the construction we-g'ive to the second section of the act of Congress of February ■>, 1853, entitled, “ An act to continue half-pay to certain widows and orphans.” The plaintiff in the court below claims-that under that act his intestate, as the widow of a- revolutionary soldier, was entitled to a pension commencing March 4, 1848. She was allowed a pension only from February 3, 1853,. the date of the passage of the act-, and this suit is an effort to recover what are called arrears, viz, the pension for the time which elapsed between March 4, 1848, and February 3,1853.
It has been insisted on behalf of the United States that the-Court of Claims has no jurisdiction in such a case. We do not propose, however, to determine that question now, for we are of opinion that if that court had jurisdiction, it erred in giving judgment for the plaintiff. The section of the act of 1853,. under which the plaintiff claims, is as follows: “And be it further enacted, that the widows of all officers, non-commissioned officers, musicians, and privates of the revolutionary army, who were married subsequently to January, anno Domini eighteen hundred, shall bo entitled to a pension in the same manner as those who were married before that date.” It is clear that if this act stood alone no widow could be entitled to-a pension under it, commencing anterior to its passage. All *207 statutes are to be construed as operating prospectively, unless a contrary intent appears beyond doubt. But it is said that tbe act is to be construed witb reference to tbe prior act of July 29, 1848, wbicb enacted “ that tbe widows of all officers, non-commissioned officers, musicians, soldiers, mariners, or marines, and Indian spies, wbo shall bare served in tbe continental line, State troops, volunteers, militia, or in the naval service, in tbe revolutionary war with Great Britain, shall be entitled to a pension, during' such widowhood, of an equal amount per annum that their husbands would be entitled to, if living, under existing-pension laws, to commence on tbe fourth day of March, eighteen hundred and forty-eight, and to be paid in the same manner that other pensions are paid to widows ;” (then followed the exceptions;) “ but no widow now receiving a pension shall be entitled to receive a further pension under the provisions of this act;, and no widow married after the first day of January, one thousand eight hundred, shall be entitled to receive a pension under this act.” The second section enacted that the same rules of evidence, regulations, and prescriptions shall apply and govern the Commissioner of Pensions and pension agents as now prevail under existing- pension laws which relate to widows of revolutionary officers and soldiers. The argument of the plaintiff is that the act of 1853 was substantially an amendment of' this act, intended to repeal the provision it contains, that widows married after January 1,1800, should not be entitled to its-benefits, and that hence the two acts must be read together, and ad widows be entitled to a pension commencing on the 4th of March, 1848. This is inferred from the assumption that the-act of 1848 must be referred to in order to fix the rate, or amount, of the pension granted by the act of 1853, as well as-its duration, and that if there be an implied reference for those purposes, there must be for the purpose of fixing the commencement of the pension. The argument is not without weight, but we think it insufficient to overbalance the reasons there are for holding that the act of 1853 is intended to grant pensions only from the time of its enactment. It does not profess to be an amendment of any former act, and there is no necessary reference to the act of 1848, even for the purpose of fixing the rate or duration of the pensions granted by it. Laws prior to the act of 1848 had determined the rate of pensions granted to widows of revolutionary soldiers as equal to the pay *208 of the husband, and the pension was of course during’ widowhood, unless restricted by the statute. Nor was reference to any former act necessary to ascertain when the pension was to commence, for it commenced, of course, with the passage of the act, unless a different intention was either expressed or plainly implied. True, the act of 1853 declared that widows married after January, 1800, shall be entitled to a pension in the same manner as those who were married before that date, but the manner may well refer to the mode in which the xiension must be obtained by the adjudication of the Commissioner of Pensions, and to the rules, regulations, and prescriptions provided by law long before 18-18, for the government of the Commissioner and pension agents, and for the payment of pensions. Certainly such a direction is not inconsistent with our holding that the act of 1853 was not intended to have a retroactive effect, or to confer a right to a pension commencing prior to its passage.
But, without pursuing this lino of remark further, whatever might be our opinions respecting the construction of the statute, were the matter res nova, we cannot regard the question as an open one. Immediately after the passage of the act it was construed by the Commissioner of Pensions as granting pensions commencing only from and after its passage, and stick construction has ever since been given to it by that Bureau. That such was its meaning seems also to have been the understanding of the next succeeding Congress after it was enacted. The act of 1818 gave pensions to widows of soldiers and mariners when they had been married before the 1st day of January, 1800. The act' of 1853 gave pensions to widows of soldiers, but not to widows of mariners. This was followed by an act passed .February 28,1855, giving pensions to widows of mariners and marines who served in the Navy during the revolutionary war, “in the same manner, and to the same extent,” as the widows of soldiers of the Army, “ under the second section of the act of February 3, 1853.” Here not only the manner, but the extent of the pension was directed, and widows of mariners were put upon the same footing with widows of soldiers married after January, 1800. Had it been understood that soldiers’ widows, married after January, 1800, were entitled to pensions commencing March 1, 1818, it would have been unnecessary to declare that mariners’ widows shoo hi have pen *209 sions “ to the same extent*7 as under the act of 1853. But measuring the extent by the grant made in 1853, and not by that of 1848, tends to show that Congress regarded the extent or commencement of the pension under the act of 1853 as different from that of those granted by the act of 1848. And this is made quite certain by the history of the legislation. The act of 1855, when first proposed, contained the following provision : “ And the pensions granted by this act, and those under the said section of the act of February 3,1853, shall commence on the 4th day of March, 1848.77 This provision was intended to change the construction which the Commissioner of Pensions had given to the act of 1853, (30 Cong. Globe, 92,) but it was stricken out, and the statute was enacted as it now stands. The intention of Congress was thus clearly manifested to adopt the construction of the act of 1853, which had been given to it by the Pension Bureau, and we are hardly at liberty now to interpret it differently.
In view of this action of Congress, and the long-standing construction of the act given by the Department whose duty it was to act under it, we are of opinion that the plaintiff’s intestate was not entitled to a pension commencing anterior to February 3,1853. The judgment of the.Court of Claims was, therefore, erroneous.
The judgment is reversed, and the record is remanded with instructions to dismiss the plaintiff’s suit.