Nott, J.,
delivered the opinion of the court:
By the Amended Court of Claims Act 3d March, 1863 (12 Stat. L., 765, §§ 7,10; Rev. Stat., §§ 1089,069,11093), Congress for the first time attached the element of finality to thejudgments of this court, and provided that they should be satisfied at the Treasury, instead of going back, as before, to Congress for approval. At the same time and in the same statute Congress enacted the first statute of limitations applicable to demands against the government, and thereby attached to the claimant’s right of ac *152 tion ia this court the following condition: “ That every claim against the United States cognizable by the Court of Claims shall be forever barred unless the petition setting forth a statement of the claim be filed in the court [by tlie claimant] or transmitted to it under the provisions of this act [by eitlier of tlie bouses of Congress] within six years after the claim first accrues” (§ 10).
As the law then stood, tbe court could acquire jurisdiction of a claim in no other way than those alluded to in the statute of limitations ; that is to say, only by the voluntary filing of the claimant’s petition in this court or by his presenting it to Congress and its subsequent transmission to the court by the Secretary of the Senate or the Clerk of the House. (Act 1863, § 2; see, also, Court of Claims Act, 1855,10 Stat. L., 612, § 1.)
It has been supposed by the Executive Departments and by the public generally that this statute of limitations does not extend to the Executive Departments, and that no statute of limitations bars the consideration of claims beyond the limits of this court except, perhaps, a statute relating to the refund of taxes {Act 5th June, 1872; Eev. Stat., 3228). Since the Amended Court of Claims act in 1863, thousands of claims have been submitted to the Executive Departments and to Congress, and it is safe to say that no statute of limitations has ever been set up against one of them. In the monthly public-debt statement of the Treasury, bonds and coupons which have accrued more than six years are carried as a x>art of the present debt of the government; ex. gr., of the “old debt,” which matured prior to-January 1, 1837, there is stated to be due and owing, of principal $57,665, and of interest $61,174.81. It is certain that payment of a coupon has never yet been refused because it had accrued more than six years before presentation. In public estimation, and in the settled and uniform construction of the statutes by the heads of the Executive Departments, it was and is as much the duty of an Executive Department to examine, audit, adjust, and allow a claim which accrued more than six years before presentation as a claim that accrued during the current year. Sixteen years of uniform contemporaneous construction by both Congress and the Executive Departments is certainly entitled to grave consideration. *
*153 Five years after tbe enactment of tbe statute of limitations, Congress, by tbe Act 25th June, 1868 (15 Stat. L., 75, § 7), conferred on tbe Secretaries of tbe Executive Departments tbe power to trausmit to this court certain classes of claims “involving disputed facts or controverted questions of law,” “with all tbe vouchers, papers, proofs, and documents pertaining thereto.” Tbe claims so transmitted were to be “proceeded in as other cases pending in said court,” and to be “subject to tbe same rules and regulations.” Tbe only limitation set upon tbe discretion of tbe Secretaries was that no claim of tbe designated classes should be referred unless tbe court, hy reason of the subject-matter and character,” might have entertained jurisdiction of it by tbe voluntary action of the claimant.”
Under this statute, different Secretaries have transmitted to this court for investigation and determination claims which bad accrued more than six years before tbe date of their transmission ; and of such is tbe present case.
A resulting question is whether tbe comprehensive language of tbe earlier statute of limitations precludes, in effect, tbe Executive Departments from availing themselves in such cases o tbe power given to them by tbe later act, 1868 — whether, when a department has delayed the payment of a claim until more than six years have elapsed from tbe time it first accrued, tbe Secretary may order payment, but may not secure a judicial investigation of it in this court ?
The cases contemplated by tbe earlier statute are cases where a right of action is conferred upon tbe parties coupled with a limitation that they shall avail themselves of it within a reasonable time; where tbe action is voluntary upon their part; tbe delay exclusively attributable to their own neglect; and tbe bar directly tbe result of their own laches. Tbe cases coming up from tbe Excutive Departments are few; they involve tbe direct personal discretion of tbe Secretary; they occur only where be is in doubt as to what bis official action should be; they come entirely at bis will and often against tbe protest of the party; and, when tbe disputed fact or controverted question is judicially determined, they primarily go back to the department *154 whence they came, to be satisfied out of appropriations made for it. The case is, in effect, as if a Secretary merely sent up an issue of law or of fact to be tried here.
In a word, the two statutes were enacted for entirely different purposes. The one conferred on the claimant a right of action against the government; the other conferred on the Executive Departments a judicial means of investig’ation against claimants. Under the former, the court acquires jurisdiction only by the filing of the claimant’s petition, either directly by himself or indirectly by one of the houses of Congress. Under the latter, it acquires jurisdiction exclusively by the transmission of the claim by a Secretary, the subsequent petition of the party performing merely the office of a pleading.
This case probably turns upon the latter proposition. If, after a claim has been presented to the proper dejiartment in due time, and after it has been examined and allowed by an Auditor and approved and certified by a Comptroller of the Treasury, a Secretary, against the protest of the party, can transmit it to the court, and the court by his action acquire jurisdiction, it seems impossible to ascribe to the legislative intent the inequitable purpose of barring the claim by reason of a lapse of time for which the department and not the party was responsible. (Cyrus C. Clarks Case, 96 U. S., 37.)
This proposition concerning the power of a Secretary to transmit a claim to this court for judicial determination has been in several instances and in various forms before the court, and there have been few questions more exhaustively discussed or carefully considered. In one of the earlier of these cases (Bright’s Case, 6 C. Cls. B., 118), two adverse parties claimed the rent of the same premises. The Secretary of War, being unable to determine which was the owner of the premises and entitled to receive the rent accrued, transmitted their conflicting claims to this court for determination under the statute. One of the contending parties refused to appear and prosecute his claim in this court. Without his appearance no final determination of the controversy could be reached, and the recovery of a judgment by the rival party would have left the demand of the other open, and the defendants liable over to him. It was, therefore, apparent that if jurisdiction could only be acquired by his voluntary appearance, the purpose of the statute would be defeated and the prudent action of the Secretary be utterly unavailing. *155 A very serious question, consequently, was presented, and after mature deliberation it was lield tbat the court acquired jurisdiction of the claim by the transmission of the Secretary.
The last of these cases sets forth an.exhaustive statement of the matured views of the majority of the court on the construetion of the two statutes: *
Upon the merits, the court entertains no doubt of the claimant’s right to recover. He was not ordered to his home to await orders, as was the officer in Phisterer’s Case (12 C. Cls. R., 98, 94 U. S. 219), nor to the city of San Francisco, but to the headquarters of the military department. If the headquarters had been moved, he would have been' bound to go with them j if he was kept at a military station constantly awaiting orders,, he was to that extent assigned to duty there, and the responsibility for his non-employment rested with his superior officer.
The judgment of the court is that the claimant recover of the defendants the sum of $1,742.

 In Pugh’s Case (decided on the same day) the Supreme Court rests its-decision entirely upon the uniform construction given to a doubtful statute by the Executive Departments and the Court of Claims; and ia Mrs. Alex- *153 cinder’s Case (7 C. Cls. R., 205, 12 Wall., 177), where the Pension Bureau had. given a certain construction to a statute for a long period of time and Congress apparently had acquiesced in it, that the construction which should he given by the court was not an open question as if the matter were res nova.

 The opinion here referred to is that of the Chief J ustice in the TFinnisim-mei Company’s Case (12 C. Cls. K., 319).