OPINION.
Scofield, J.,
delivered the opinion of the court:
January 4,1862, claimant’s intestate was appointed a boatswain in the Navy.
October 22,1872, by order of the President, he was placed upon the retired list, under section 23 of the Act of August 3, 1861, ch. 42 (12 Stat. L., 291; now Bev. Stat., §•$ 1448-1455).
Are warrant officers included in this section? If not, the action of the President was void, and the officer was entitled to pay on the active list. The following is the section:
Sec. 23. And be it further enacted, That when any officer of the Navy, on being ordered to perform the duties appropriate to his commission, shall report himself unable to comply with such order, or whenever in the judgment of the President of the United States an officer of the Navy shall be in any way incapacitated from performing the duties of his office, the President, at his discretion, shall direct the Secretary of the Navy to refer the case of such officer to the Board. * * * The Board, whenever it finds an officer incapacitated for active service, will report whether, in its judgment, the incapacity result from long and faithful service, from wounds or injuries received in the line of duty, from sickness or exposure therein, or from anyjother incident of the service; if so, and the President approve of *542 such judgment, the disabled officer shall thereupon be placed upon the list of retired officers according to the provisions of this act. But if such disability or incorupetency proceeded from other causes, and the President concur in opinion with the Board, the officer may be retired upon furlough pay, or he shall be wholly retired from the service with one year’s pay, at the discretion of the President. * * *
This act was passed early in the war. It was followed soon after by tbe Act of December 21, 1861, cb. 1 (12 Stat. L., 329), which placed upon the retired list all officers who had “been borne on the Naval Register forty-five years,” or were sixty-two years of age. These two acts manifest the intention of Congress to remove from the active list all officers who might be deemed to be unfit actors in the terrible war then flagrant in the country. At that time the President had power to dismiss any warrant officer at pleasure, and through a new appointment, by and with the advice and consent of the Senate, to remove commissioned officers. (Blake v. United States, 103 U. S. R., 227.) To turn out these officers, many of whom were broken with age, wounds, or exposure in the service, seemed a cruel expedient. Congress, therefore, enlarged the retired list. The enlargement included all commissioned officers. Did it also include warrant officers as well1? Under the head of warrant officers were classed boatswain, gunners, carpenters, sailmakers, and at that time first, second, and third engineers. The President and Secretary, charged with the responsibility of putting the personnel of the Navy in fighting trim, and unwilling to deprive old officers of bread, construed the statutes to include warrant as well as commissioned officers. As the service required retirement or dismissal, it was a beneficent construction. All succeeding Presidents have adopted it.
But it must be admitted that, by the words of the statutes, the intention of Congress is not clear. “ Any officer,” in the first line of section 23, embraces warrant as well as commissioned officers, but in the second line it seems to be qualified by the words “duties appropriate to his commission.” Further on occur the words “placed upon the list of retired officers according to the provisions of this act.” “This act,” in section 22, prescribes the pay of all- retired commissioned officers, except those retired for incapacity not incident to the service, but makes no provision for-warrant officers. It also speaks of these officers being withdrawn “from the line of pro *543 motion. Warrant officers ha'd no line of promotion. From this phraseology the counsel of the claimant has been able to make a strong argument in favor of his construction. If the case were entirely new, it is not improbable that the court would concur with him. But the act is now more than twenty-one years old. At the first the President and the Navy Department construed it to include warrant officers. A large number have been retired under that construction. It cannot be doubted that a decision which should reverse this longstanding practice, and fender void the whole list of retirements, would produce great mischief. Besides, the President’s construction was not without reason. There are two sides to the argument. “Any officer of the Navy” certainly includes warrant officers. “ Commission,” in the second line, relied upon to limit the act to commissioned officers, is not necessarily used in a technical sense, and if not so used it signifies office or position. “Warrant” arid “commission,” outside of naval technicality, are synonymous words. There is no difference, in form, between a commission and a warrant as used in the Navy, except that one recites that the appointment is made “ by and with the advice and consent of the Senate,” and the other does not. Both are signed by the President. “According to the provisions of this act,” does not, as claimant supposes, necessarily refer to the pay schedule in section 22. It may, without violence to rules of construction, mean the same as if it read “by virtue of this act,” or “by authority of this act.” In reply to the objection that warrant officers do not appear in the pay schedule of section 22, it may be said that section 23 prescribes the pay of all officers retired for incapacity not incident to the service. Claimant’s intestate was retired for this reason. In the first section of the Act of December 21,1861, by which all officers are retired who are sixty-two years of age or have served forty-five years, warrant officers are clearly included. There are no words of limitation, as in section 23 of the Act of August 3, 1861, though some of them reappear in sections 5 and 6 of the act.
In the Bevised Statutes these laws are re-enacted, but so arranged as to clearly include warrant officers. Section 1588 provides the pay omitted in section 22 of the Act of 1861.
As before stated, if this question had come before us unem *544 barrassed by Executive construction and long practice, we might bave agreed to claimant’s construction. But now, considering that the question is not free from doubt, that the construction of the President has been acted upon for more than twenty years, that the act has been incorporated in the Revised Statutes in a manner to sustain that construction, and that it does not appear that in the lifetime of claimant’s intestate any objection or protest on his behalf was made either to the retirement or pay, we do not feel at liberty to interfere.
In Edwards’s Lessee v. Darby (12 Wheat., 210) the Supreme Court says: .
In tlie construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law and were appointed to carry its provisions into effect is entitled to very great respect.
In United States v. Moore (95 U. S. R., 763) the opinion in Edwards’s Lessee is cited with approval, and the court adds, “ and ought not to be overruled without cogent reasons.” This opinion is again approved in United States v. Pugh (99 U. S. R., 265), and the court there says:
While the question is one by no means free from doubt, we are not inclined to interfere at this late day with a rule that has been acted on by the Court of Claims and the Executive for so long a time.
The same principle was decided by this court in Hahn’s Case (14 C. Cls. R., 305), and recently affirmed by the Supreme Court (probably 108 U. S. R.)
Assuming that claimant’s intestate was legally placed upon the retired list, the next inquiry is as to the amount of his pay. Down to July 1, 1875, he was paid at the rate of $900 a year, but no question is raised about that. After that date, under section 1593 of the Revised Statutes, he was paid at the rate of $500 a year. This section provides that “officers placed on the retired list, on furlough pay, shall receive only one-half of the pay to which they would be entitled if on leave of absence on the active list.” Section 1556 fixes a boatswain’s pay during the “fourth three years on leave or waiting orders” at $1,000 a year, and after twelve years’ service at $1,200 a year. Claimant’s intestate was retired on “furlough pay” during his “fourth three years” of service, and was therefore entitled under section 1593 to only $500 a year. This amount was paid him.
*545 tliat after the revision of the statutes his retired pay should have been calculated according to section 1588 instead of 1593. The pay under 1588 would have been $800 a year. Section 1588 refers to retired Navy officers in general, and 1593 specifically to officers retired on furlough pay. Section 1593 must, therefore, be held to take all cases embraced within its terms out of section 1588. Exactly the same question was raised, carefully considered, and decided the same way in Magaw’s Case (16 C. Cls. R., 3).
is also contended that claimant’s intestate was at least entitled to longevity pay under section 1593, which after January 4,1874, would have been $600 a year. Do officers retired under section 1593 come under the longevity rule?
Longevity pay is supposed to be based upon the theory that an officer’s usefulness, increased by length of service, should be rewarded by increased remuneration. Experience undoubtedly is the better part of education. In all professional and buisness affairs it commands the higest price. In fixing the pay of Navy officers on the active list, Congress had recognized this fact and graded the pay by length of service. It can have very little application, however, to any officer on the retired list, and none at all to officers retired for incapacity. A retired officer has no opportunity to improve in knowledge or skill in nautical affairs. He rusts rather than brightens. An officer retired for incapacity has neither the opportunity nor the power to improve. He will never be recalled. Unequal to his duties in time of peace, he would be more than useless in war.
the construction given to Revised Statutes, § 1588, in three cases decided at this term, to wit, Thornley’s, Rutherford’s, and McClure’s (ante, 111, 339, 347), no officer retired under its provisions is entitled to longevity paj\ Unless expressed in unmistakable language, we are not authorized to infer that Congress, after refusing longevity pay to officers retired on account of wounds received or health broken in the service, intended to bestow it upon officers retired for incapacity never caused by the service, often by their own folly, intemperance, or excess. Such an enactment would be in confiictnot only with the policy indicated by section 1588, but with the fundamental theory of longevity pay. While it must be admitted that the language of section 1593 is doubtful, it can be *546 supposed that Congress intended to bestow this boon upon tlie elass of officers the least deserving and deny it to the most meritorious.
Longevity pay under section 1593 has never been allowed by the accounting officers of the Treasury, and we do not feel called upon by anything appearing in this case to overrule their construction and long practice.
Claimant’s petition will be dismissed.