Scofield, J.,
delivered the opinion of the court:
June 22, 1874, the claimant was duly “inscribed on the pension list,” and received a certificate to that effect.
April 14, 1877, upon a report of special agents charging misrepresentation and fraud in obtaining the certificate, the claimant, by order of the Secretary of the Interior, was dropped from the pension list.
The case only involves the right of the Secretary to strike from “ the list of invalid pensions” a name which he has found, upon evidence furnished him through an ex parte investigation by special agents, was placed there through false and fraudulent representations.
This action of the Secretary was based upon the authority supposed to be given in section 4739 of the Revised Statutes and in accordance with the long practice of the department. That section is as follows :
“ Sec. 4739. Before the name of any person is placed upon the pension roll under the three preceding sections, proof shall *125 be made, under such regulations as the Secretary of the Interior may prescribe, that the applicant is entitled to a pension under the provisions of the sections herein cited; and the Secretary of the Interior shall cause to be stricken from the pension-roll the name of any person, whenever it appears by proof satisfactory that such name was put upon such roll through false or fraudulent representations.”
If the latter clause of this section can be considered as extending to all pensioners, the authority is abundant. Whether it does so extend is not clear. The section was originally enacted February 14, 1871 (16 Stat., 411), as part of the law granting pensions to soldiers of the war of 1812, and subsequently re-enacted in the Revised Statutes. The first clause of the section relates, by its own limitation and citation, exclusively to the soldiers of that war, but the latter clause, it is claimed, relates to all pensioners. The language of this latter clause is indeed broad enough to include all pensioners. It has no restrictive words. The supposed restriction is derived entirely from the fact that the first clause of the section, by its own terms, relates only to the pensioners of the war of 1812.
There are several other statutes which support the construction given by the Secretary of the Interior to section 4739. Section 4720, first enacted March 3, 1873 (17 Stat., 569), authorizes the Commissioner of Pensions to suspend payment of pensions, though granted by special acts of Congress, “upon satisfactory evidence that fraud was perpetrated in obtaining such special act.” It is said, with much reason, that it would be very strange that authority should be given, when fraud is suspected, to suspend jmnsions granted by special acts of Congress, and withheld when granted by the department. This provision would indicate that in the judgment of Congress the Secretary and Commissioner already had that power over pensions allowed by themselves.
Again, section 4744 authorizes the Commissioner to detail special agents “ to investigate suspected attempts at fraud on the government through and by virtue of the provisions.of the pension laws.” If this investigation is to be confined to unsuccessful attempts at fraud, the section has little or no bearing upon the case; but if it can be construed to extend to attempts partially or temporarily successful, it would indicate an intention on the part of Congress that the evidence thus obtained should be acted upon- according to the provision of *126 section 4739. By the Act of July 25,1882 (22 Stat. L., 175), the power is given to the Commissioner, through special agents, to investigate all cases, both pending and adjudicated. This enactment is in the form of a revision of section 4744, and may •be regarded as a legislative construction of it.
We cannot suppose that Congress intended that evidence of fraud thus obtained should be-laid away in a pigeon-hole. It must have been intended for use; and in what way could it be used except in a revision of the pension roll 7
Aside from these statutes, the power of revision, as the government counsel has argued, may well be considered to be inherent in the nature of the first decision as well as in the necessities of the bureau. The pension is a gratuity. It involves no claim of right, no agreements of parties, and, as it is not assignable, no acquired rights of third parties. (Section 4745, Rev. Stat.) The law describes a class of persons upon whom it chooses to bestow its bounty. The Secretary and Commissioner are directed to find out and make a list of persons thus described. . The proceedings and evidence are largely ex parte. From the vast number of applicants, the work must be performed and the roll made up, for the most part, by the clerks. If placing the name of an applicant upon the roll is to be considered a judicial act, should it not be considered only a judgment nisi ?
The practice of the department to drop from the roll names that have been placed there by misrepresentation and fraud is of long duration. Even if the Secretary’s construction of the statute were doubtful, we should not feel called upon, under former rulings of this court and the Supreme Court, to overturn a practice long continued, apparently necessary for the honest administration of the pension laws, well known to Congress and supported at least indirectly by the many provisions of law above cited.
In Edwards’s Lessee v. Darby (12 Wheat., 210) the Supreme Court says:
“ In the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law and were appointed to carry its provisions into effect is entitled to very great respect.”
In United States v. Moore (95 U. S. R., 763) the opinion in Edwards’s Lessee is cited with approval, and the court adds, *127 “And ought not to be overruled without cogent reasons.” This opinion is again approved in United States v. Pugh (99 U. S. R., 265), and the court there says:
“ While the question is one by no means free from doubt, we are not inclined to interfere, at this late day, with a rule that has been acted on by the Court of Claims and the Executive for so long a time.”
The same principle was decided by this court in Hahn’s Case (14 C. Cls. R., 305), and affirmed by the Supreme Court (107 U. S. R., 402). Also in Alexanders Case (12 Wall., 177, and 7 C. Cls. R., 205); Wright's Case (15 C. Cls. R., 87); and Brown’s Case (18 C. Cls. R., 537), affirmed by the Supreme Court (113 U. S., 568).
If the practice of the department is found to contravene the beneficent intentions of the government, the ear of Congress is ever open to the complaints of its beneficiaries.
The petition of the claimant is dismissed.