Davis, J.,
delivered, the opinion of the court:
Immediately after the fire of 1874 in Chicago, which destroyed the post-office, the postmaster there arranged to rent a portion, of a large building known as the “Honoré” building for postal service.' No formal contract in writing was ever' made, and the various negotiations and circumstances relating to the agreement between the owner of the building and the Government have been discussed, and the agreement has been construed by this court in two cases between the Connecticut Mutual Life Insurance Company, plaintiffs, and the United States, defendants, reported in twenty-first Court of Claims Reports, pages 191 and 195. The facts in those cases so far as they relate to the present issue are now again found. In. the former opinions we said:
“He (the postmaster) practically settled upon the premises known as the Honoré block, and after an informal understanding with the owner began moving into it the clerks and property of his office; meantime a special agent had been dispatched from Washington, who, upon arrival, conferred with, the postmaster, the supervisor of Government buildings, and the general superintendent of the Railway Mail Service as to-suitable quarters for the post office. They examined several buildings and unanimously settled upon the Honoré block, recommending that a certain portion of it be taken at a rental of $20,000 per annum. The Post-Office Department agreed to this, provided the rooms could be retained until the Government building, then in process of erection, should be ‘ready for occupancy.’ This stipulation was assented to, it being generally understood that the Government building would probably not be ready for some three years. No written lease was-entered into, but the findings show that the Government had the right under the verbal agreement, so far as it was binding, to occupy a defined portion of the Honoré block at a rental of $20,000 per annum until their own building should be ready for occupancy. This arrangement was made July 25,1874, and the defendants remained on the premises until January 4, 1879.” (21 O. Gis.' U., 196.)
So much as to the first letting. Subsequently other rooms were occupied by the defendants and this transaction was thus described by us:
“During the summer of 1875 the Postmaster-General inspected the post-office in Chicago, and directed the postmaster *174 to use some unoccupied rooms iu the Honoró block, of a part of which the Government was then a tenant as set forth in the findings in another action between the same parties tried with this. The postmaster obeyed this direction, and used the rooms {which were in an unfinished state) for a ‘mail-bag repair department.’ ”
In July, 1877, Honoré was declared bankrupt, and his as-signee sold to Warder, the plaintiff herein, all the right, title, and interest which Honoré had on the 26th July, 1877, and all the right, title, and interest acquired by the assignee, to what was declared in the assignment to be “ a claim against the Government of the United States of America for rent of that'part of third floor of Honoré building used by mail-bag repairing rooms from July, 1875, to July 31, 1877.” This sale was confirmed by the court. Plaintiff therefore claims the rent for these rooms for the period anterior to the bankruptcy; the Connecticut Mutual Life Insurance Company claimed the same rent for the period following the bankruptcy, having abandoned all demand for the period covered by plaintiff’s petition. The two cases differ in this, that in the former case there appeared negotiations between the parties after the bankruptcy and after the insurance company had become the owner of the Honoré building; those negotiations which before had an important bearing upon the litigation cío not affect the present case. In the case at bar we can consider only that which occurred while Honoré owned the building prior to the bankruptcy proceeding and the sale of the claim to plaintiff herein, and new testimony is now introduced in relation thereto. Further testimony has also been introduced in relation to Honoré’s endeavors to obtain compensation for the rooms which somewhat changes the findings upon this point.
Honoró agreed to let a portion of the building for a fixed rental, and we must determine what portion was covered by the agreement, and whether the rooms, rent for which is now claimed, were part thereof.
July 29,1874, the special agent of the Post-Office Department who had the matter in charge thus described this portion in a telegram to the Department in Washington: “Building five stories and basement in height. Post-office will occupy two stories and basement of Dearborn-street front and three stories and basement of rear frontage, on Dearborn street 100 feet frontage, on alley 144 feet.” Upon receipt of-this tele *175 gram the agent was allowed to leave Chicago, his action being in effect approved.
In a formal report to the Department, made at the same time with the telegram, the same agent described the leased portion much in detail, and included in his description the rooms now in question. In sending forward the plans, however, he stated this to have been an error, and explicitly declared that the rooms the subject of this controversy were not included in the rented portion. 'Uo objection seems to have been made by the Department. These rooms were not occupied for nearly a year, and the full rent was paid.
In June, 1875, the Postmaster-General visited Chicago, and, finding it necessary to provide facilities for repairing mail-bags, he directed the postmaster to provide such iaeilities, apparently thinking at first that one room in the basement would be sufficient. As a result of further conversation between them, apparently, the postmaster, under the direction of his chief, fitted up a few rooms in the' third story, and because of the great increase in business was soon obliged to add others, until he had absorbed upon this story nine rooms and a hall. At the same time the postmaster had a conversation with Mr. Honoré, the owner, in relation to the rental value of the rooms ; but, for reasons detailed in the findings no lease was made, while it nevertheless was understood that a rental should be estimated upon the rent then being paid under the original letting. Later the postmaster wrote to the Department that owing to Mr. Honored absence no arrangement had been made as to additional rent, but an estimate therefor was sent with the letter. Later, Honoré demanded rent, and his demand was approved by the postmaster. '
There would be no difficulty in reaching the conclusion that these rooms in the third story were not included in the original letting were it not for an understanding that the Government was not to be strictly confined to the enumerated rooms, but if these were insufficient for the needs of the service a reasonable addition of other rooms would be made without increase of rental. The amended report of the special agent, made when the building was first leased, distinctly shows that - these third-story rooms were not regarded as included in the general letting, and if they are now to be so regarded it must be by reason of the broad understanding that the Government *176 was not to be strictly confined to the enumerated rooms. Evidently any addition of space made under such an agreement must be reasonable and not excessive, and must be for the needs of the postal service.
It appears that mail-bags had not been repaired in Chicago prior to the taking of these rooms, but had been sent to other-cities, so that Honoré can not be assumed to have known that any space would in the future be required for this kind of work. The repair of mail-bags is in a sense a part of the-postal service; so is the manufacture of mail-bags or postage-stamps ; yet without something to put him upon inquiry the lessor of a building to the Post-Office Department for postal service would be unlikely to anticipate the establishment therein of a shop for extensive repairs or for the manufacture of articles needed in connection with that service. The rooms-were nine in number, excluding the hall, and upon the third-story; rooms not entirely finished, but nevertheless available-for other tenants, and in any event having a value out of proportion to the needs of the kind of service rendered by a repair-shop. The Postmaster General himself thought at first that one room in the basement would suffice, and while the-needs of the work may have required more space than he then anticipated, they did not require rooms of so much superior grade.
It appears further that not only were the mail-bags of the Chicago office repaired in this shop, but pouches and sacks-were sent there from the surrounding country, vastly increasing the business. The postmaster at Chicago and the owner-of the building both assumed that some rent should be paid for the use of these rooms; of this the Department was informed and did not then dissent.
In view of all these circumstances we can not regard the-addition of these rooms as embraced in the understanding as to “ reasonable addition of other rooms ” without increase of' compensation, and we think the owner was entitled, for them,, to a reasonable addition to the rental.
It is, however, urged that by an'assignment from Honoré, in-1874, the Connecticut Mutual Life Insurance Company became-entitled to any rents from this building due or not due from the Government; further, that this action is barred by the statute of limitations, as the claim, if any, accrued quarterly *177 from the 1st of July, 1875, while plaintiff first presented his demand to the Post-Office Department in 1881.
The assignment to the Connecticut Mutual Life Insurance Company was in 1874, some time prior to the occupation by defendants of the rooms in controversy; the assignment itself is not in the record, but there has been produced in evidence without objection and appears in the findings a notification to the Post-Office Department, signed by the insurance company and by Honoré, which recites the terms of assignment. Prom this it appears that Honoré assigned the “ rents due, or to become due,” from the G-overnment “for the premises leased by us, or agreed so to be,” for a post-office in Chicago; “ the premises so leased, or agreed to be,” are described as “ the north part of the ‘ Hew Honoré Block,’ at the northwest corner of Adams and Dearborn streets, and are the same now occupied and being used for said post-office.”
Only a portion of the building was at any time occupied by the Government, the remainder being free for rental to others, and at the time the assignment was made the rooms now in controversy, which, as we have seen, were not included in the original letting, were then under the owner’s control. It eau no more be held that the assignment covered these rooms than that it. covered all other rooms in the Honoré building vacant at the time the instrument was executed, and which might at any subsequent time have been occupied by the Government. The subject-matter of the assignment was the space “leased or agreed to be” leased to the Government at that time; these rooms were not leased to the Government, nor was there any agreement to lease them, for they Were not included in the reasonable addition of rooms allowed by the agreement. Defendants’ contention then upon this point can not be supported.
The case comes here by reference from the Postmaster-General, in accordance with the provisions of section 1063 of the Revised Statutes, and it is urged that as plaintiff did not himself present the claim to the Post-Office Department until more than six years had elapsed after it accrued, the claim is barred, under the provisions of section 1069, R. S. It appears, however, that immediately after the rooms were occupied Houoré, plaintiff’s assignor, did present the claim, both orally and in writing, to the postmaster in Chicago, who recommended an allowance, and in writing to the Department in Washington ; *178 and that títere followed correspondence and discussion in relation thereto. The claim therefore was presented for settlement to the proper Department well within six years. At that time plaintiff was notits owner; but he is entitled, under the assignment, to the benefit of the prior acts of his assignor, done in an effort to secure favorable action upon the claim. The claim was first presented by Honoré to the Department almost immediately after the occupation of the rooms. The petition relates back to that date, and the action is not barred by the statute of limitations. Finn v. The United States (123 U. S. R., 227). Lippett v. The United States (14 C. Cls. R., 148, and 100 U. S. R., 663. Green v. The United States (18 C. Cls. R., 93). Savage v. The United States (23 id., 255).
The reasonable rental value of the rooms in controversy, in their then unfinished state, for the period covered by the assignment in bankruptcy, we find to be $3,450, and judgment will be entered for this amount in plaintiff’s favor.