Rott, J.,
delivered the opinion of the court:
This is an action brought by one of the chief supervisors of elections for an unpaid balance of his accounts for services rendered and expenditures made at the Congressional elections. *316 of ] 882, 1884, and 1886. The legal questions involved will be best understood by adverting to them in the order of the facts on which the demand rests.
In 1871 the claimant was a commissioner of the circuit court for the northern district of blew York. The term “ commissioner” is a misnomer, inasmuch as these officers are in legal effect magistrates. They are in no sense administrative officials or assistants of the courts, and the duties which they perform are chiefly and almost entirely judicial. Their connection with the courts grows out of the fact that the courts are the appointing power and may prescribe rules for their procedure, but their official relations with the courts are nothing more than those which subsist between a committing magistrate and a court of oyer and terminer. (Rev. Stat., § 627, etc.)
While thus acting as commissioner of the circuit court the claimant was named and appointed by that court as chief supervisor of elections, under the Act 28th February, 1871 (16 Stat. L., p. 433, 437, § 13, Rev. Stat., § 2025), which authorizes the circuit courts in certain cases “to name and appoint” “from among the circuit court commissioners” “one of such officers, who shall be known for the duties required of him under this act as the chief supervisor of elections.” The duties of that office are in no sense judicial. Instead of continuing to act, as all judicial officers must, with his own brain and hand, he became the chief of four hundred and fifty deputies, and the work which he supervised was as strictly administrative as that of a sheriff, a marshal, or the chief of police in one of our. .great cities.
The purpose of Congress in committing the appointment of an executive officer to the judiciary was undoubtedly to secure non-partisan service in the difficult and delicate task of preventing frauds and crimes against the elective franchise; and this is plainly manifested in the additional restrictive safeguard which does not allow a circuit court to appoint any citizen •as chief supervisor, but restricts the appointment to the mere designation of one of the already existing judicial officers, termed cqmmissioners (Rev. Stat., § 2025), and by requiring the chief supervisor in certain cases, “ acting both in such capacity and officially as a commissioner of the circuit court,” to examine facts, subpoena and compel the attendance of witnesses, administer ■oaths, and take testimony. (Act 1871, § 7; Rev. Stat., § 2020.)
*317 After the claimant’s services had been rendered at the Congressional elections of 1882, 1884, 1886, respectively, he presented his accounts as supervisor to the District Court of the-northern district of Hew York for approval. In this matter of the examination and approval of the accounts the functions of the court may not have been judicial, but the methods were. The judge did not come down from the bench and turn a single leaf of the accounts; he did not add up a single column of the multitudinous figures, nor reckon the compensation of one of the four hundred and fifty supervisors who had been appointed;, nor compute the number of folios of written matter in any report, index, order, or notice. And it is safe to say that all the judges in the service of the Government could not have gone through these voluminous accounts of these chief supervisors of election with the necessary care and particularity of accounting officers, and audited the accounts as they are audited at the Treasury, page by page and item by item, though they'had devoted to them all the days and hours of an entire term.
What the district judge in this case did do, and it was stated on the argument and conceded by counsel that he did all that any other judge has done in such cases, was to see that the chief supervisor’s affidavit of verification was in due form, and then to call on the district attorney to specify his objections to the account. If the district attorney had raised an objection, the judge would have heard him on the one side and the chief supervisor on the other, and would then have rendered a decision on the item objected to in the form of an approval or disapproval of the account. But when it appeared that no objection was raised by the district attorney, the approval followed as a matter of course, being embodied in the following order:
“At a stated term of the District Court of the United States for the northern district of blew York, held at the city of Albany, on the 20th day of January, 1885 — present the honorable Alfred 0. Coxe, judge — in the matter of the account of' Charles M. Dennison, chief supervisor of elections tor the northern district of Hew York.
“An account of Charles M. Dennison, chief supervisor of elections for the northern district of Hew York, for official services and disbursements for the election held in said district on the 4th (lay Qf Hovember, 1884, at which Representatives in. Congress were chosen, and the registration therefor having., *318 been submitted by Alden Chester, the assistant district attorney, to this court for approval, and it appearing to the satisfaction of the court, by the oath of the said chief supervisor .upon the account, that the services have been actually and necessarily performed as stated, and the charges appearing to' be just and according to law—
“It is hereby ordered that said account, amounting to five thousand five hundred and ninety-two dollars and fifty-nine cents ($5,592.59),be, and the same is hereby, approved.
“Alfred C. Coxe.”
It is not the purpose of this court to express a criticism as to the method pursued by the district court, or intimate that the true intent of the statute was not carried into effect; on the contrary, we have already said that it would have been impossible for all the district and circuit judges combined to'have properly audited these accounts during a term; but it is proper to advert to what was actually done as a fact to be considered in the case; and it is manifest from the terms of the order as it is from the circumstances of the ease that there was no examining, no auditing, no scrutiny of the claimant’s charges or vouchers. All that was gained by the proceeding was that it secured the verification under oath of the claimant, and enabled the district attorney to raise objections to questionable items if he saw fit to do so. The order was granted, first, because the district attorney, having the opportunity, raised no objection to the account; second, because the claimant had sworn that'the services had been “actually and necessarily performed as stated.”
The next step in the history of the case was the rejection by the accounting officers of many items in the several accounts, amounting in the aggregate to $7,4á8. The correctness of some of the reductions (not before the court) is apparently conceded by the claimant, for the items which form the cause of action aggregate $7,005, and this amount is further reduced in the claimant’s requests for a finding of the facts to $6,998.68. This amount of $6,998.68 is therefore the subject of the controversy, and the amount involved in the litigation.
The compensation of the chief supervisor of elections consists of fees prescribed by the Revised Statutes, § 2031, and his accounts must “be made out, verified, examined, and certified as in the case of accounts of commissioners, save that the *319 examination or certificate required.may be made by either the circuit or district judge.”
At the time when this law was enacted, in 1871, an earlier statute, the Act 16th August, 1856 (11 Stat. L¡, p. 49, § 2; Rev. Stat., § 846), provided that the accounts of commissioners should be “examined and certified to by the district judge of the district in which they are appointed previous to their presentation to or revision by the accounting officers of the Treasury Departments The only change that the act 1871 made was that the examination and certification might be before either the circuit or district judge. As to the effect of certification on both sets of accounts, those of the commissioner and those of the chief supervisor, the law was silent, i. e., approval or disapproval, or the neglect or refusal or inability of the judge to act were not in terms provided for; but both accounts were manifestly to be presented “to the accounting officers of the Treasury Department” for “revision.”
Such was the law when the-office of chief supervisor of elections was created. Since then two alterations have been enacted. '
The first of these was caused by the revision of the statutes in 1874. In the original act of 1856 the accounts of district attorneys, clerks, and marshals had been grouped together (§ 1), and it had been ex¡ ressly declared that they should be “ subject to revision upon their merits by said accounting officers as in case of other public accounts;” but the accounts of commissioners had been separately placed in a distinct section (§ 2), which did not contain this declaratory clause. The Revised Statutes, on the contrary, grouped the commissioners with the other officers, and made their accounts equally subject to the clause just quoted.
The second alteration of the law was made by the Act 22d February, 1875 (18 Stat. L., p. 333, sec. 1), which provides that “commissioners shall forward their accounts, duly verified by oath, to the district attorneys of their respective districts, by whom they shallbe submitted for approval in ojien court, and the court shall pass upon the same in the manner aforesaid,” i. e., in the manner in which a court must pass upon the accounts of clerks and marshals, by their presentation in open court and the entry of record of an order approving or disapproving the account.
*320 A strenuous argument has been pressed upon the attention of the court by the counsel for the claimant to the effect that the act of 1875 applies only to the accounts of commissioners, and does not change the law as it' was enacted by the devised Statutes, § 2031, which prescribes for the accounts of chief supervisors certification by the judge, but is silent as to revision by the accounting officers. And hence it is inferred that the latter are not “subject to revision upon their merits by said accounting officers as in case of other public accounts,” but are dependent only upon the certification of a circuit or district judge.
The court is of the opinion that this distinction can not be maintained. The chief supervisor of elections and the commissioner of the circuit court are in all cases one and the same person; the two accounts are the accounts of the same individual; the compensation of the two offices is'by fees, which, though not identical, are closely analogous; the appointing power and the removing power are the same — the circuit court; and the channels by which the two accounts reach the Treasury are identical, with the single and expressed exception that the accounts of the chief supervisor may be certified by either the circuit or the district judge.
Reading all of the statutory provisions together, it must be held that a chief supervisor of elections is in legal effect a commissioner of a circuit court designated to perform certain additional and prescribed duties; that his compensation for these additional duties is to be ascertained, examined, certified, and paid in the same manner and by the same means and methods as his compensation for his other or ordinary duties as commissioner, and that whatever restrictions may be set or provisions made by new statutes for settling, revising, and paying the accounts of commissioners, in the absence of an expressed intent to the contrary, will extend to those of his accounts which are for services rendered eo nomine as chief supervisor of elections. Moreover, the accounting system of the Treasury is one of the oldest, best known, and most highly esteemed'párts of our governmental machinery. To its scrutiny all accounls are subjected of persons having business or financial relations with the Government, from, the President to the smallest contractor. If there are any accounts which should be subjected to the close revision of trained and competent auditors they *321 are such accounts as these, accounts made up of innumerable items, and each item involving renewed calculations. Nothing short of a clear intent, unequivocally expressed in a statute, will warrant a court in holding that the involved accounts of a public officer are not to be settled at the Treasury as other public accounts are settled, or that Congress has intended to create an extraordinary exception to the accounting system of .the United States where no need of such an exception exists, and where none is in terms declared. We, must accordingly hold that the accounts of chief supervisors of elections are subject to the same law, and the same revision, and the same mode of settlement as the accounts of circuit court commissioners.
Such then being the facts and (in the opinion of the court) the law of this case, we come to the final question of its disposition.
On the argument it was maintained by the counsel' for the Government that the claimant had failed to establish the quantum of his services and expenditures by competent evidence; and as to many of the items such is the opinion of the' court. That is to say, if these services and expenditures were to be treated as res nova and established ab initio by ordinary evidence, exclusive of the action of the district judge and the accounting officers, we should be obliged to hold that the evidence is insufficient. But since the argument, the Supreme Court has rendered a decision in the case of the United States v. Jones, (134 U. S. R., 483), wherein it is expressly held that the approval of a commissioner’s account by a circuit court” is prima facie evidence of the correctness of the items of that account; and in the absence of clear and unequivocal proof of mistake on the part of the court it should be conclusive.”
Of course, this exceedingly broad language is to be construed with reference to the facts to which it was applied. Those facts were that a commissioner had on “ eleven different days,” “ in as many criminal cases,” performed some judicial duty; that is to say, the duty of a magistrate in deciding on the amount of bail, or for hearing and deciding on a motion for continuance. By the Eevised Statutes, § 847, a commissioner is to be compensated “ for hearing and deciding on criminal charges $5 a day for the time necessarily employed.” The circuit court had approved this commissioner’s accounts; that is to say, had virtually determined that each of these acts con *322 stituted a day’s work, entitling the commissioner to his per diem within the intent of the statute. This was a question which the district attorney and circuit judge were much better .able to determine than the accounting officers.
Nevertheless, the accounting officers refused to allow those items ; and on the appeal, the Assistant Attorney-General, who represented the Government, contended that in such cases the u time actually employed is an element to be considered.” On these facts and that argument, the Supreme Court held that the approval of those items by the circuit court was evidence prima facie of their correctness; but the court did not hold that the approval attained the conclusiveness of a judgment or award ; nor that in matters of detail and calculation it placed the account above the revision of the accounting officers ; nor that matters of mistake could not be corrected at the Treasury; nor that it rendered final and conclusive the account as an account.
On the whole case — the evidence, the facts, the statutes, and the decision of the Supreme Court — we have reached in this suit the following conclusion as the rule of its decision:
Where the services of a commissioner or chief supervisor are within the scope of the law as declared by the Eevised Statutes, § 2025, 2020, the approval of the circuit or district court determines the fact that they were necessary and proper and of a character sufficient to entitle the officer to the fee prescribed by law for such services; but the approval of the cqurt does not establish the accuracy of the account, nor take it as an account out of the supervision of the accounting officers, whose duty still remains to examine it, revise it, verify its calculations, scrutinize itsv vouchers, and ascertain its true amount; nor will the approval of the court render the Government liable, either before the accounting officers or in this court, for a service or expenditure not authorized by law.
The judgment of the court is that the claimant recover of the defendant the sum of six thousand nine hundred and ninety-eight dollars and sixty-eight cents ($6,998.68).