Richardson, Oh. J.,
delivered the opinion of the court:
When a claim is transmitted by the head of an Executive Department, under the second section of the Bowman Act, of March 3, 1883, ch. 116 (22 Stat. L., 485), the court is to determine the law applicable to the case in such Department, and not necessarily what the law would be upon the same claim if commenced by voluntary petition filed under the statutes conferring jurisdiction upon the court to enter judgment. If it were otherwise we would be obliged to dismiss this case under the provisions of Revised Statutes, section 1069, because the petition was not filed within six years after the claim first accrued.
*343 This pase was transmitted to the court by the Secretary of the Treasury, and embraces two claims, both growing oat of llie claimant’s service in the Fifth Kegiment of Delaware Militia after mustered into the service of the United States in No • vember, 1862, one for $25 bounty, and the other for monthly pay from the date of muster-in until the time when he was called upon for active duty, neither of which has been paid.
The facts are these u The claimant was a private in said regiment when, with the consent and approval of the governor of Delaware, the regiment was mustered into the service of the United States for nine months. As soon as mustered in all the members were permitted to return to their homes, pursue their usual avocation, and go where they pleased in or out of the State until called into active service. This call was made in June, 1863, when, on the 27th of that month, the claimant and others reported for duty, and actually served from that date until August, 1863, when he was mustered out with the regiment.
A question immediately arose as to the time for which the regiment should be paid, and in reply to a telegram of inquiry the Adjutant-General telegraphed, August 7, 1863, that “the regiment would be allowed for time actually on duty.” The pay-roll was so made out; the claimant accepted the amount allowed and receipted for the same on the pay-roll without formal protest. At the time of the muster-in the claimant made no demand for the bounty now claimed nor for his first month’s pay.
This case has been thoroughly argued, in printed briefs and orally, upon the question as to whether or not the members of th e Delaware regiment when mustered into the service of the United States were volunteers or State militia, and as to their right to bounty, and when their pay was to commence. The following statutes were cited and relied upon:
Act of July 22. 1861 (ch. 9, 12 Stat. L., 268).
Act of July 24¡ 1861 (ch. 16, 12 Stat, L., 274). '
Act of July 25, 1861 (ch. 17, 12 Stat. L., 274).
Act of July 29, 1861 (ch. 12, Stat. L., 279).
Act of July 31, 1861 (ch. 34, 12 Stat, L., 284).
Act of. August 6, 1861 (ch. 63, 12 Stat, L., 326).
Act of February 13, 1862 (ch. 25, 12 Stat. L., 339).
Act of July 17, 1862 (ch. 201, 12 Stat. L., 597).
Act of March 3, 1863 (ch. 78, sec. 6, 12 Stat. L., 743).
Act of March 3, 1869 (ch. 133,15 Stat. L., 334).
*344 This array of statutes sufficiently indicates that ambiguity and doubt in their construction as applicable to the Delaware militia called iuto the,.service of the United States may exist at this late day, however clear they might have appeared, if they did so appear, to the officers who were called upon to execute them at the time of or soon after their passage, with the events to which they applied fresh in the minds of such officers. All of the acts, as well as the occasion for the employment of militia and volunteers in the suppression of the rebellion to which they relate, are more than twenty years old. The War Department and the Treasury Department both acted upon the order of the Adjutant-General, a copy of which and the original pay-rolls, with the receipt of the claimant and of others indorsed thereon, have ever since been on file in the Departments.
The particular transactions involved date back more than twenty-three years before the claimant asserted his present claim.
The telegram of the Adjutant-Gen eral might not of itself be regarded as an executive construction of general application, but in connection with the facts that the War and Treasury Departments acted upon it, and the claimant acquiesced therein for more than twenty-three years, it may be held, as against him at least, to have been a practical contemporaneous construction by the officers who were then charged with the execution of the statutes, and by himself who acquiesced, and that such construction ought not to be disturbed by the Treasury Department after such a lapse of time.
In the United States vs. Johnston (124 U. S. R., 253) the Supreme Court held that—
“The contemporaneous construction of the statute by those charged with its execution, especially when it has long prevailed, is entitled to great weight and should not be disregarded or overturned, except for cogent reasons and unless it be clear that such construction is erroneous.”
In United States vs. Moore (95 U. S. R., 763a) that court said:
“The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons. The officers concerned are usually able men aad masters of the subject. Not unfrequently they are the draughts-men of the laws they are afterwards called upon to interpret.”
*345 In numerous other cases the same doctrine is laid down and followed. Stuart v. Laird (1 Cranch., 299, 308); Brown's Case (18 C. Cls. R., 537) affirmed on appeal, 113 U. S. R., 568; Harrison's Case (20 C. Cls. R., 122); Water's Case (21 C. Cls. R., 30, 38) affirmed ou appeal.
The claimant’s acquiescence -is well defined and strongly marked. The claim for bounty is founded mainly upon the acts of July 5 and July 17, 1862 (12 Stat. L., 509, 597).
The first act provided tliat the act of July 29, 1861 —
“ Shall be so construed as to allow $25 of the bounty of $100 therein provided to be paid immediately after enlistment to every soldier of the regular and volunteer forces hereafter enlisted during the continuance of the existing war.’’
The second act provided that—
“Every soldier who may enlist under the provisions of this section shall receive his first month’s pay and also $25 as a bounty upon the mustering of his company or regiment into the service of the United States.”
notwithstanding these provisions it does not appear that the claimant made any demand for bounty nor for one month’s pay in advance at the time of his muster-in, and he never claimed more pay than was received until the lapse of more than twenty-three years after he and his regiment were paid on their muster-out, when, on.the 6th of December, 1886, he presented these claims for the first time to the Treasury Department for payment.
For six years this court was open for him in which to file his petition and for the same period he might have presented his claims to the Treasury Department, whence they could have been transmitted here for a judicial determination and judgment under the provisions of the act of June 25, 1868, chapter 71 (now Bev. Stat., sec. 1063); and in either case an appeal might have been had to the Supreme Court from the judgment of this court, but he waited until the opportunity of obtaining a judgment from which an appeal would lie oh behalf of himself or of the Government to that court of last resort was lost before presenting his claims to the Treasury Department (Finn Case, 123, U. S., 227).
In our opinion the claims were presented too late for the ac- ■ counting officers to receive and examine them.
The clerk will certify these findings of fact, conclusions of law, and this opinion to the Treasury Department lor its guidance or action according to the provisions of the Bowman act.'