Weldon, J.,
delivered the opinion of the court:
From the year 1874 to the commencement of this suit the claimant was a commissioner of the Circuit Court of the United States for the eastern district of New York, and chief supervisor of said district, under the provisions of title No. 26, Eevised Statutes, entitled “ Elective Franchise.”
As such supervisor, he performed certain duties and made certain disbursements for the expenses of his office, the nature and character of which are shown by the findings.
The petition alleges the services to have been “ for entering and indexing the records of persons registered and of voters, being records of the chief supervisor’s office, 58,399 folios, at 15 cents per folio, amounting to the sum of $8,759.85, and disbursements amounting to the sum of $163.” No contention is made against the allowance of the disbursements, and the only controversy in the case is as to the legality of the service performed and the consequent right of recovery.
The findings establish the performance of the services, and their exact character is set forth in finding ix.
The defence insists that the statutes under which the services were performed do not contemplate such a record as was made by the claimant, and that for the unnecessary accumulation of matter there can be no recovery against the defendants.
Sections 2026 and 2031 embrace the provisions of law regulating the duties and prescribing the fees of chief supervisors, and are as follows:
“ Section 2026. The chief supervisor shall prepare and furnish all necessary books, forms, blanks, and instructions for the use and direction of the supervisors of election in the several cities and towns in their respective districts; he shall receive the applications of all parties for appointment to such positions,’ upon the opening, as contemplated in section two *453 thousand and twelve, of the circuit court for the judicial circuit in which the commissioner so designated acts, he shall present such applications to the judge thereof, and furnish information to him in respect to the appointment by the court of such supervisors of election; he shall require of the supervisors of election, when necessary, lists of the persons who may register and vote, or either, in their respective election districts or voting precincts, and cause the names of those upon any such list whose right to register or vote is honestly doubted to be verified by proper inquiry and examination at the respective places assigned by them as their residences; and he shall receive, preserve, and file all oaths of office of supervisors of election, and of all special deputy marshals appointed under the provisions of this title, and all certificates, returns, reports, and records of every kind and nature contemplated or made requisite by the provisions hereof, save where otherwise herein specially directed.”
“ Section 2031. There shall be allowed and paid to the chief supervisor, for his service as such officer, the following compensation, apart from and in excess of all fees allowed for the performance of any duty as circuit court commissioner: For filing and caring for every return, report, record, document, or other paper required to be filed by him under any of the preceding provisions, ten cents; for affixing a seal to any paper, record, report, or instrument, twenty cents; for entering and indexing the records of his office, fifteen cents per folio; and for arranging and transmitting to Congress, as provided for in section two thousand and twenty, any report, statement, record, return, or examination, for each folio, fifteen cents; and for any copy thereof, or of any paper on file, a like sum.” * * *
Under the authority vested in claimant as chief supervisor by section 2026, he required the supervisors of election in his district to send “ a list of the persons who may register or vote,” or either, in their respective election districts; and the returns made by the supervisors of election are the basis of the record made in claimant’s office, as shown in finding IX.
The purpose of the legislative policy embraced in the title “ Elective Franchise ” was to secure a fair and honest expression of the legal voters in all elections held under and by virtue of the Constitution and laws of the United States; and to that end it was intended that, while not interfering with the legal right of a person entitled to vote, there should be established an efficient system against the perpetration of any fraud upon the legality and purity of Federal elections.
It must be conceded that the claimant had a right, under *454 section 202(5, to call upon his subordinates to transmit to his office the lists which constitute the original of the record for the making of which he seeks compensation in this proceeding.
Under his call nineteen hundred books were returned to his office, and in order to reduce them to more convenient form he made a record of them, as shown by the findings. It will be seen that the record of the thirteen persons embraced in the finding ranges in the number of the lists from 101 to 099.
The liability of the defendants depends upon the construction of that part of section 2031 which provides “for entering and indexing the records of his office, fifteen cents per folio."
When the books or lists of the subordinate supervisors were returned to the chief supervisor they became the basis of a record in his office, and with them he had a right to deal under said sections.
This court has held in a number of cases that commissioners, clerks, marshals, and supervisors have a right to whatever fees the law prescribes for any and every act, which may be done in their official capacity, without reference to the necessity of the service. Officers are not permitted to multiply fees, but are authorized to do in extent whatever is necessary in the performance of their official duty.
Iu the case of Dennison v. The United States, (25 C. Cls. R., 304), among the many items contained in said claim is one for the same kind of service, to wit, subitem No. 24, “Entering and indexing the record of names of persons who were registered and voted for members of Congress in the several cities, 29,609 folios, at 15 cents each.”
In the decision of that case this court allowed said item as a legal and proper charge for official service. It is true that the record of the voter was less elaborate than the record in this case, but the principle of the right of the chief supervisor to make a record in his office of the return of the subordinate supervisors is recognized by the judgment and opinion in that case. It may be that some of the information as to the voter might have been omitted consistent with .the object and purpose of the statute; but there is no suspicion arising from the evidence in this case that the record was made unnecessarily prolix for the purpose of accumulating fees.
It is difficult to understand how a record can be entered and indexed without spreading it at large upon some book , of the *455 office, and the fact that the services are to be paid for by the folio is an indication of substantial clerical work.
The findings show that from 1874 to the election of 1886 the claimant had performed like service, and had been paid by the Department.
While the doctrine of estoppel might not apply in this case as it did in the Hartson Case (25 C. Cls. R., 451), the construction of a statute by the officers of a Department intrusted with its execution and application, and upon the faith of which emp'loyés and officers of the Government have acted, is entitled to great weight and consideration when such statute becomes the subject of judicial construction:
“The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration, and ought not to be overruled without cogent reasons. (Edwards v. Darby, 12 Wheat., 210; United States v. The State Bank of North Carolina, 6 Pet., 29; United States v. MacDaniel, 7 id., 1.) The officers concerned are usually able men and masters of the subject. Not unfrequently they are the draftsmen of the laws they are afterwards called upon to interpret. (95 U. S. R., 763.)
“The same principle was decided in this court in Hahn's Case (14 C. Cls. R., 305) and affirmed by the Supreme Court (107 U. S. R., 402). Also in Alexander's Case (12 Wall., 177, and 7 C. Cls. R., 205); Wright's Case (15 C. Cls. R., 87); Brown’s Case (18 id., 537), affirmed by the Supreme Court (113 U. S. R., 568); and Harrison's Case (20 C. Cls. R., 122; 21 C. Cls. R., 16).
It is almost impossible for the court to determine by an inspection of the record made by the claimant, and for which he charges, what is really material and necessary to be entered and indexed. While there are twenty-seven columns devoted to the identity of each voter, there are less than one-half folio to each person. The officers intrusted with the execution of the law must be given some discretion in what they will embody in the lists, and so with the chief supervisor, when the papers reach his office he must be permitted to exercise his best judgment as to how they shall be entered and indexed, and if by the entry of the entire list the public convenience is subserved and the purpose of the statute accomplished, the law allows the compensation prescribed for the service. Conceding that the record might have been made less in this instance without impairing the efficiency of the check against *456 illegal voting, in the absence of evidence that the claimant acted in bad faith we can not hold that he was not authorized to record the lists at length. While the exact charge has not been judicially determined in a suit under the act of March 3, 1887, in any of the circuit or district courts of the United States, the judges of those courts, so far as we are informed, have uniformily recognized the validity of the claim in the approval of the accounts of the chief supervisors.
In the many cases decided at the present term of the Supreme Court upon the question of fees, it does not appear that the exact charge involved in this case was determined in any of those cases; but in the case of The United States v. Barber. (140 U. S. R.) the court said, in relation to charges in excess of certain folios: “ It is evident that no iron rule can be laid down upon the subject; that something must be left to the discretion of the commissioner and district attorney, and that, if the complaints are not unnecessarily prolix, their action should be sustained. This is a question of fact in all cases, and as the court below has found, not only in its formal approval of this account, but in its opinion upon demurrer, that no unnecessary verbiage was employed and no surplusage to increase fees, we think the item should be allowed.”
The issue in this case is as to whether the claimant has recorded more than is necessary in order to accomplish the purpose of having a record in his office.
There is no finding tending to show a want of good faith on the part of the claimant, or that the record is unnecessarily prolix, and in the absence of such a finding we must take the adjudication of the Circuit Court, “ that no unnecessary verbiage was employed” and no effort was made to increase the fees of the office.
We are of the opinion that the claimant is entitled to recover the sum of §8,922.85; and for that amount a judgement is entered.