## UNITED STATES *v.* ALEXANDER.

Under the act of Congress of 23d of February, 1853, granting to widows of
Revolutionary soldiers, who were married subsequently to January, A. D.
1800, "a pension in the *same manner* as those who were married before
that date," the widows do not take, like these last, from the date of the
act which gives *them* a pension (the act, namely, of 29th July, 1848),
but take only from the date of the said act of 23d February, 1853. The
terms "in the same manner" refer to the mode in which the pension
was to be obtained, and to the rules, regulations, and prescriptions pro-
vided by law for the payment of the same.

APPEAL from the Court of Claims, the case being thus:
On the 29th July, 1848, Congress enacted:

"That the widows of all officers, non-commissioned officers,
musicians, soldiers, mariners, or marines, and Indian spies, who
shall have served in the Continental line, State troops, volun-
teers, militia, or in the naval service, in the Revolutionary War
with Great Britain, shall be entitled to a pension, during such
widowhood, of an equal amount per annum that their husbands
would be entitled to, if living, under existing pension laws, to
commence on the 4th day of March, 1848, and to be paid in the
same manner that other pensions are paid to widows." . . .

The act proceeded, however, further to declare that "no
widow *married after the* 1*st day of January*, 1800, should be
entitled to receive a pension under the act."

A subsequent section enacted that the same rules of evi-
dence, regulations, and prescriptions should apply and gov-
ern the Commissioner of Pensions and pension agents as
then prevailed under existing pension laws which related to
widows of Revolutionary officers and soldiers.

On the 23d of February, 1853, Congress passed another
act, thus:

"And be it further enacted, that the widows of all officers,
non-commissioned officers, musicians, and privates of the Revo-
lutionary army, *who were married subsequently to January*, A. D.

1800, shall be entitled to a pension *in the same manner* as those who were married before that date."

In this state of the statutes, Mrs. Alexander, widow of a soldier in the Revolutionary War, who was married to him subsequently to the year 1800, and who had received a pension from the date of this act of February 3d, 1853, filed a petition in the Court of Claims to recover what her counsel called "the arrears of her pension;" that is to say, to have it declared that her pension took effect from the passage of the act of 1848. The argument of the claimant's counsel was that the act of 1853 was substantially an amendment of the act of 1848, and intended to repeal the provision it contains, that widows married after January 1st, 1800, should not be entitled to its benefits; that hence the two acts must be read together, and all widows be entitled to a pension commencing on the 4th of March, 1848. This was inferred from the assumption that the act of 1848 must be referred to in order to fix the rate, or amount of the pension granted by the act of 1853, as well as its duration, and that if there be an implied reference for those purposes there must be for the purpose of fixing the commencement of the pension.

Of this view was the Court of Claims, and it accordingly gave a decree for the amount claimed as arrears. The United States appealed, *Mr. B. H. Bristow, Solicitor-General, and Mr. C. H. Hill, Assistant Attorney-General, insisting in her behalf*—

1. That the Court of Claims had no jurisdiction of a claim for a pension.

2. That under a proper construction of the act of 1853, persons who under it were entitled to a pension, were entitled to one but from the date of *that* act.

*Mr. J. A. Wills, contra,* enforced the argument above presented, as made below.

Mr. Justice STRONG delivered the opinion of the court.

Whether or not the Court of Claims has jurisdiction in a case such as the present, is a question which we do not pro-

pose now to determine, for we are of opinion that if that court had jurisdiction, it erred in giving judgment for the plaintiff. Passing, then, to the merits of the case, it is clear that if the act of 1853 stood alone no widow could be entitled to a pension under it, commencing anterior to its passage.   All statutes are to be construed as operating prospectively, unless a contrary intent appears beyond doubt.   But it is said the act is to be construed with reference to the prior act of 1848.   The argument in support of this view is not without weight, but we think it insufficient to overbalance the reasons there are for holding that the act of 1853 is intended to grant pensions only from the time of its enactment.   It does not profess to be an amendment of any former act, and there is no necessary reference to the act of 1848, even for the purpose of fixing the rate or duration of the pensions granted by it. Laws prior to the act of 1848 had determined the rate of pensions granted to widows of Revolutionary soldiers as equal to the pay of the husband, and the pension was of course during widowhood, unless restricted by the statute.   Nor was reference to any former act necessary to ascertain when the pension was to commence, for it commenced, of course, with the passage of the act, unless a different intention was either expressed or plainly implied.   True, the act of 1853 declared that widows married after January, 1800, shall be entitled to a pension *in the same manner* as those who were married before that date, but the manner may well refer to the mode in which the pension must be obtained by the adjudication of the Commissioner of Pensions and to the rules, regulations, and prescriptions provided by law long before 1848 for the government of the commissioner and pension agents, and for the payment of pensions.   Certainly such a direction is not inconsistent with our holding that the act of 1853 was not intended to have a retroactive effect, or to confer a right to a pension commencing prior to its passage.

But, without pursuing this line of remark farther, whatever might be our opinions respecting the construction of the statute, were the matter *res nova*, we cannot regard the

question as an open one. Immediately after the passage of the act, it was construed by the Commissioner of Pensions as granting pensions commencing only from and after its passage, and such construction has ever since been given to it by that bureau. That such was its meaning seems also to have been the understanding of the next succeeding Congress after it was enacted. The act of 1848 gave pensions to widows of soldiers and mariners when they had been married before the first day of January, 1800. The act of 1853 gave pensions to widows of soldiers, but not to widows of mariners. This was followed by an act passed February 28th, 1855, giving pensions to widows of mariners and marines who served in the navy during the Revolutionary War, "in the same manner, and to the same extent," as the widows of soldiers of the army, "under the second section of the act of February 3d, 1853." Here not only the *manner*, but the *extent* of the pension was directed, and widows of mariners were put upon the same footing with widows of soldiers married after January, 1800. Had it been understood, that soldiers' widows, married after January, 1800, were entitled to pensions commencing March 4th, 1848, it would have been unnecessary to declare that mariners' widows should have pensions "to the same extent" as under the act of 1853. But measuring the extent by the grant made in 1853, and not by that of 1848, tends to show that Congress regarded the extent, or commencement, of the pension under the act of 1853, as different from that of those granted by the act of 1848. And this is made quite certain by the history of the legislation. The act of 1855, when first proposed, contained the following provision: "And the pensions granted by this act, and those under the said section of the act of February 3d, 1853, shall commence on the fourth day of March, 1848." This provision was intended to change the construction which the Commissioner of Pensions had given to the act of 1853,* but it was stricken out, and the statute was enacted as it now stands. The intention

---

* 30 Congressional Globe, 92.

of Congress was thus clearly manifested to adopt the construction of the act of 1853, which had been given to it by the Pension Bureau, and we are hardly at liberty now to interpret it differently.

In view of this action of Congress, and the long-standing construction of the act given by the department whose duty it was to act under it, we are of opinion that the plaintiff's intestate was not entitled to a pension commencing anterior to February 3d, 1853. The judgment of the Court of Claims was, therefore, erroneous.

JUDGMENT REVERSED, and the record remanded with instructions to

DISMISS THE PLAINTIFF'S SUIT.