Bichard sow, J.,
delivered the opinion of the court:
The claimant corporation in this case was a manufacturer and proprietor of friction-matches from May, 1870, to the time of bringing its action, and during that time purchased of the defendants a large amount of proprietary stamps for which it furnished its own dies and designs, each purchase being in amount greater than $500. By the provisions of the Act July 14,1870, ch. 255, § 4 (16 Stat.L., 257), and Bevised Statutes, § 3425, the claimant became entitled to a commission of 10 per cent, on the whole amount purchased.
The controversy between the parties which gives rise to this action relates wholly to the- manner of calculating the commission.
The Act July 4,1862, ch, 119, § 102 (12 Stat. L., 477), which first established taxation by stamps as part of the internal-revenue system for raising money to carry on the war for the suppression of the rebellion, authorized the Secretary of the Treasury to sell stamps, and to allow and deduct from the aggregate amount the sum of not exceeding 5 per cent, as commission to collectors, postmasters, stationers, or other purchasers, provided that the proprieter of any proprietary articles, among which were friction-matches, should be allowed a disco.unt on amounts purchased at one time of not less than $50 nor more than $500,5 per cent., and on amounts over $500, 10 per cent.
The first official circular issued by the Commissioner of Internal Be venue promulgating regulations in regard to revenue stamps was on the 12th of January, 1863, and contained this provision:
The following commission, payable in stamps, will be allowed:
On purchases of $50 or more, 2 per centum.
On purchases of $100 or more, 3 per centum.
On purchases of $500 or more, 4 per centum.
On purchases of $1,000 or more, 5 per centum;
and the words payable in stamps were in italics. (BoutwelFs Direct and Excise Tax System of the United States, A. D. 1863, p. 391.)
Stamps were not only used for the payment of commissions, but they were paid at their full value, without discount or commission thereon. They were put up in packages. A package for which the purchaser paid $50 contained stamps to the face value *483 of $51; a $100 contained $102 in stamps, and so on. This regulation applied in terms only to sucli stamps as tbe Secretary of tbe Treasury was authorized to sell at such discount as be might allow, not exceeding tbe limit fixed by statute, and as to them it was clearly legal, since it reduced tbe commission in each case slightly below tbe maximum; that is, to tbe extent of tbe discount on those stamps which were- paid as commission.
But the Treasury Department applied the same rule in the sale of proprietary stamps for which purchasers furnished them own dies and designs, and allowed and paid in stamps at their face value the 10 per cent, commission allowed by statute, which the Secretary had no authority to reduce, instead of allowing the commission on the whole amount received, as now claimed. The difference is equal to 10 per cent, in money on the stamps delivered at their face value as commissions.
This rule thus applied has been uniformly acted upon from the passage of the first stamp act, in 1802, to the present time, and has been acquiesced in by dealers in proprietary articles until the present action was instituted, in May, 1879. More than forty millions of dollars have been collected of other parties for stamps sold in accordance therewith. Congress has several times revised and re-enacted the statute on which it is founded, and, with a full knowledge, we may presume, of the construction adopted by the Treasury Department, has made no enactment to change it.
Under 'these circumstances, whatever may be our opinion of the application of the rule in the first instance to the sale of proprietary stamps for which the proprietors furnished dies and designs, we do not feel authorized to reverse it at this late day. In reaching this' conclusion we follow the principle laid down by the Supreme Court in Mrs. Alexander’s Case. (12 Wall., 177, and 7 C. Cls. R., 265), and in Pugh’s Case (99 U., S, 265), and by this court in Hahn’s Case (ante, 306).
The demurrer is sustained, and judgment must be entered thereon dismissing the claimants’ petition.
Drare, Ch. J., was absent when this case was heard, and took no part in the decision.