Peelle, J.,
delivered the opinion of the court:
The question in this case is the same which was involved in the Royce case, decided adversely to claimant at the present term of court (36 C. Cls. R., 328), and but for the earnestness and ability with, which the claimant’s counsel contends that the court erred in applying the rules it did in the interpretation of the statute, upon which the claimant bases his right to recover, we should let this case follow the Royce case without comment.
The statute referred to is section 13 of the act of March 3, 1899 (30 Stat. L., 1004, 1007), and reads as follows:
“That after June thirtieth, eighteen hundred and ninety-nine, commissioned officers of the line of the Navy and of the Medical and Pay Corps shall receive the same pay and allowances, except forage, as are or may be provided by or in pursuance of law for the officers of corresponding rank in the Army: Prodded, That such officers when on shore duty shall receive the alloAvances, but fifteen per centum less pay than when on sea duty; but this provision shall not apply to warrant officers commissioned under section twelve of this act: Provided further, That when naval officers are detailed for shore duty beyond seas they shall receive the same pay and allowances as áre or may be provided by or in pursuance of law for officers of the Army detailed for duty in similar places: Provided further, That naval chaplains who do not possess relative rank shall have the rank of lieutenant in the Navy; and that all officers, including warrant officers, who have been or *378 may be appointed to the Navy from civil life shall, on the date of appointment, be credited, for computing their pay, with five years’ service. And all provisions of law authorizing the distribution among captors of the whole or any portion of the proceeds of vessels, or any property hereafter captured, condemned as prize, or providing for the payment of bounty for the sinking or destruction of vessels of the enemy hereafter occurring in time of war, are hereby repealed: And provided further, That no provision of this act shall operate to reduce the present pay of any commissioned officer now in the Navy; and in any case in which the pay of such an officer would otherwise be reduced he shall continue to receive pa}7 according to existing law: And provided further, That nothing in this act shall operate to increase or reduce the pay of any officer now on the retired list of the Navy.”
The claimant grounds his right to recover the difference between the pay he received under Revised Statutes, section 1566, during his first five years’ service, and the amount he now claims, under the third proviso to the act quoted.
In the construction of that proviso, in connection with the section and the purpose of the act as we conceive it, the court in the Royce case reached the conclusion that the words “after June thirtieth, eighteen hundred and ninety-nine,” were intended by the Congress to apply to all the officers mentioned in the section.
But in the Royce case, as in this, the claimant was receiving his maximum pay long before the act was passed, and so whether the claimant’s rights became consummate upon the approval of the act or after June 30, 1899, is immaterial in this case.
In reaching the conclusion in that case, we did not intend to depart from the well-known rule of interpretation that the province of the court “ is to declare what the law is, and not, under the guise of interpretation or under the influence of what may be surmised to be the policy of the Government, so to depart from sound rules of construction as in effect to adjudge that to be law which Congress has not enacted as such.” (Dewey v. United States, 178 U. S., 521.)
We endeavored to follow the meaning of the language in the setting which the Congress gave — i. e., to construe the proviso, not independently of the purpose of the act or of the section of which it forms a part, but in connection there *379 with; and while the construction we gave, if sustained, will operate to give increased pay to all officers of the Navy appointed from civil life who were not receiving-their maximum pay on June 30, 1899, it will exclude those who were receiving their maximum pay on that date.
Had the proviso omitted the words “who have been,” then only those thereafter appointed would have been entitled to the increased pay, while those appointed less than five years prior thereto would have received less pay than those thereafter appointed.
The words, we think, are satisfied by construing them as applying to all those officers theretofore appointed from civil life who were not on June 30,1899, receiving their maximum pay, and this, we still think, was the purpose and intent of the Congress, and this conclusion we reached, not, as counsel say, by “rules of interpretation based on considerations outside the terms of the statute,” but from the language used in connection with the whole section and evident purpose of the act.
The subject-matter of the proviso in question pertains to the rank of chaplains and to.the basis for computing the pay of “all officers, including warrant officers, who have been or may be appointed to the Navy from civil life;” and the purview or body of the section refers to the pay of “commissioned officers of the line of the Navy and of the Medical and Pay corps,” many of whom — nearly all from the Medical Corps — were appointed from civil life, while the chaplains, the majority of the professors of mathematics, nearly all the civil engineers, and other officers were appointed from civil life.
So that the language of the proviso, “ all officers * * * who have been or may be appointed to the Navy from civil life,” clearly includes those officers mentioned in the body of the section who were appointed from civil life.
If, therefore, the claimant’s contention should prevail, those officers so appointed whose 'pay was increased after June 30, 1899, bjr assimilation to army pay, would, in addition thereto, bo entitled to receive from the date of appointment a gratuity of five years’ additional pay, thereby fixing in the same section two distinct dates for- the beginning of the pay of the *380 same officers. We can not believe that the Congress so intended.
The purpose of the act as expressed in the title thereto is “An act to reorganize and increase the efficiency of the personnel of the Navy and Marine Corps of the United States;” and while the body of an act can not be control led or restrained by the title, it may be referred to in connection Avith the language of the act to ascertain the meaning of the statute where the language is susceptible of different constructions. (Church v. United States, 143 U. S., 457-462.)
It can hardly be contended that the payment of a gratuity has anything to do with the reorganization or the increase of the efficiency of the personnel of the Navy.
An analysis of the statute shoAvs that the purposes were to transfer the officers constituting the Engineer Corps to the line of the Navy, defining their duties and how they shall take rank; defining the active list of the line of the Navy, retirement of officers, the pay of officers of the line and of the Medical and Pay corps; fixing the basis for the payment of officers appointed from civil life; repealing the prize and bounty laws; fixing the term olj, enlistment of enlisted men; providing for their retirement; defining the active list of the line officers of the Marine Corps and how vacancies therein shall be filled, and Avhat officers shall constitute the staff, etc., and repealing all acts in conflict therewith.
We must presume that the Congress were familiar with the rules relating to the construction of statutes; and in this connection the first thing to notice is that the presumption is against retrospective legislation. It is not looked upon with favor, and should not be applied where the language used is susceptible of another meaning. (Southerland on Statutory Construction, sec. 463 et seq.; Endlich on the Interpretation of Statutes, sec. 210 et seq.)
Or, as Ave said in the Royce case:
“Even though the language used would seem upon other principles of interpretation to require retroactive construction, yet in the absence of a clearly expressed intent to the contrary the presumption is against it.” (Endlich on the Interpretation of Statutes, sec. 272 et seq.)
*381 In the case of Murray v. Gibson (15 How., 422-423), concerning the construction of a statute in Mississippi limiting suits on judgments recovered out of that State, holding that such statute did not apply to judgments recovered before its passage, the court said:
“As a general rule for the interpretation of statutes, it may be laid down that they never should be allowed a retroactive operation where this is not required by express command or by necessary or inevitable implication. Without such command or implication they speak and operate upon the future only.” Harvey v. Tyler (2 Wall., 328-347), United States v. Alexander (12 Wall., 177-179), Twenty Per Cent Cases (20 Wall., 179-187), and United States v. Moore (95 U. S., 760-763).
In the case of the United States v. Burr (159 U. S., 78-87), involving the construction of section 1 of the tariff act of 1894, which took effect August 28, 1894, providing that on and after the 1st day of August, 1894, there shall be levied, collected, and paid upon articles imported from foreign countries the rates of duties therein prescribed, the court, in the construction of that section, and the similar language in section 2, as to what articles shall bo exempt from dutir, held that “in our judgment the word ‘shall ’ spoke for the future and was not intended to apply to transactions completed when the act became a law.”
In the case of United States v. Moore (supra) the court says:
“A thing may bo within the letter of the statute and not within its meaning, and it majr be within the meaning though not within the letter. ”
And so in the present case, while the words of the third proviso of section 13 standing alone might justify the construction for which the claimant contends, yet considering the purpose of the act and the language of the section of which the proviso is a part, we think the meaning is that after June 30, 1899, “all officers, including warrant officers, who have been or maybe appointed to the Navjr from civil life shall, on the day of appointment, be credited, for computing their pay, with five years’ service,” thereby fixing the beginning of the pay of all officers so appointed after June 30, 1899.
For the reasons we have given the petition is dismissed.