## CLIFFS CORPORATION v. UNITED STATES.
### No. 8083.

Circuit Court of Appeals, Sixth Circuit.
April 4, 1939.

78

George B. Young and Luther Day, both of Cleveland, Ohio (Day, Young, Veach & LeFever, Luther Day, George B. Young, and Arno G. Erdrich, all of Cleveland, Ohio, on the brief), for appellant.

George H. Zeutzius, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key, Norman D. Keller, and George H. Zeutzius, Sp. Assts. to Atty. Gen., and E. B. Freed and E. L. Foote, both of Cleveland, Ohio, on the brief), for the United States.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This is an appeal from a judgment of the District Court dismissing a suit for the recovery of documentary stamp taxes assessed and collected under Subdivision 3 of Schedule A, Title 8 of the Revenue Act of 1926 (c. 27, § 800 et seq., 44 Stat. 99, 101) 26 U.S.C.A. § 902(b). The case was submitted upon an agreed statement of facts, the material parts of which are as follows:

The stockholders of the Cleveland Cliffs Iron Company, an Ohio corporation, owning all of its common stock consisting of 408,296 shares by proper inter-company and integrated corporate action exchanged all of their stock for 402,867 shares, or one-half of the common stock, of the appellant, the Cliffs Corporation, another Ohio corporation.

The exchanges took place under mutual concurrent agreements that the shares of stock would be placed with depositaries, without indorsement of transfers on the respective books of either corporation to be held in voting trusts for a period of ten years under Section 8623-34 of Page's Annotated Ohio General Code. While in the trust the respective shares of stock were nontransferable on the books of the corporations. Voting trust certificates in the name of the individual stockholders were issued in lieu of the stock and were transferable on the books of the stock depositaries.

Each of the corporations in writing became a party to the respective voting trusts and consented to abide by their terms and agreed to make at the termina--

tion thereof transfers of stock on the stock ledgers to the then owners of the voting trust certificates representing the shares of stock originally deposited and where the certificates were held by the original owners the depositaries were to make delivery of the original shares to them.

During the life of the trust all voting and consenting rights were vested in its trustees except the consent of two-thirds in interest of the owners of the voting trust certificates were to be secured in writing before voting the stock for a merger or consolidation. The trustees, or two-thirds in number of shares of the holders of the voting trust certificates, were authorized to terminate the trust at any time during its life if they deemed it advisable and in the interest of the holders of the voting trust certificates.

During the life of the trust the trustees were to receive all dividends paid on the stock and distribute them to the holders of voting trust certificates.

At the time of the transactions under consideration, Subdivision 3 of Schedule A, Title 8 of the Revenue Act of 1926 (c. 27, 44 Stat. 101), 26 U.S.C.A. § 902(b), contained the following provisions: "On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to shares or certificates of stock or of profits or of interest in property or accumulations in any corporation, or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not, on each $100 of face value or fraction thereof, 2 cents, and where such shares are without par or face value, the tax shall be 2 cents on the transfer or sale or agreement to sell on each share.".

The Commissioner of Internal Revenue decided pursuant to the above statutes that the delivery of the respective shares of stock in the two corporations to the depositaries under the voting trust was a taxable transfer and assessed against appellant on account thereof taxes of $16,-223.26 which it paid to the Collector and in this action seeks to recover.

The District Court sustained the Commissioner and dismissed appellant's petition.

■ The Statute imposes a tax upon all agreements or instruments for the transfer of the shares of corporate stock whether made upon or shown by the books of the corporation or whether entitling the holder in any manner to the benefit of such stock interests or rights and is in the nature of an excise tax upon the transfer.

"The statute defines the scope of the tax in terms whose breadth is emphasized by the careful particularity of its provisos." Founders General Corporation v. Hoey, Collector, 300 U.S. 268, 275, 57 S. Ct. 457, 460, 81 L.Ed. 639.

The single issue for decision is whether there was a transfer of the shares within the meaning of the Statute.

Appellant contends that under the law of Ohio (Page's Annotated Ohio General Code, Volume 2, Sections 8623-34 to 8623-53 and 8673-1 to 8673-22) the trustees did not receive legal title or the right thereto but received only the custody of the certificates representing the interest of the stockholders in the corporation for the limited purpose of protecting the voting rights conferred.

■■ The exertion of the taxing power of the Federal Government is not subject to State control. The will of the Congress expressed in taxing statutes is the guide in determining taxability and in the absence of language evidencing a different purpose, a uniform application will be given to a nationwide scheme of taxation.

In many Federal taxing statutes, the tax is made to fall at the time the State law creates a legal interest. In such cases the State law will be applied to determine such interest but the Federal Statute determines when and how it shall be taxed. Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199; Welch v. Kerckhoff, 9 Cir., 84 F.2d 295, 106 A.L.R. 1434.

■ The statute here in question neither expressly nor by implication makes its application depend on local law. United States v. Childs, 266 U.S. 304, 310, 45 S. Ct. 110, 69 L.Ed. 299; Burk-Waggoner Association v. Hopkins, 269 U.S. 110, 114, 46 S.Ct. 48, 70 L.Ed. 183; Weiss v. Weiner, 279 U.S. 333, 337, 49 S.Ct. 337, 73 L. Ed. 720; Commissioner v. Carey-Reed, 6 Cir., 101 F.2d 602, decided February 8, 1939.

The phrase "sales or deliveries of, or transfers of legal title to shares or certificates of stock or of profits * * * in any corporation," is precise and comprehensive and does not need the extrinsic aid of local law to determine its applicability.

■ Congress cannot make a transfer out of a transaction which is not so in fact but if the acts done by the parties, pursuant to local law, bring them within the expressed language of the statute the transfer is taxable regardless of how it may be defined by state statutes.

■ In construing statutes, artifice should not be exalted above reality. The language should be given its natural and most obvious import without resort to subtle and forced construction for the purpose of either limiting or extending their operation. The language of the taxing statutes here involved expresses clearly the intention of the Congress, that every transfer of, or agreement to transfer, a share of the capital stock of corporations or, in other and definitive words, a right to share in the dividends declared by the directors of corporations from surplus profits and in the assets upon the distribution of them pro rata among the stockholders at its dissolution or to exercise the indicia of ownership of the shares was to be subject to the tax. Compare Founders General Corporation v. Hoey, supra; Raybestos-Manhattan· Co. v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111.

■ The imposition of a tax on the transfer of the legal title to corporate shares has been a fruitful source of revenue since 1918, and in all Treasury Regulations interpreting and construing such statutes, the Department has taxed "the transfer of stock to or by trustees." See Article 34, Treasury Regulation 71.

The Congress by an Act of June 6, 1932 [c. 209, Sec. 723(a) (c), 47 Stat. 272], amended the Act here in question by inserting the following exemption. "That the tax shall not be imposed upon deliveries or transfers from a fiduciary to a nominee of such fiduciary, or from one nominee of such fiduciary to another, if such shares or certificates continue to be held by such nominee for the same purpose for which they would be held if retained by such fiduciary, or from the nominee to such fiduciary, but such deliveries or transfers shall be accompanied by a certificate setting forth the facts." 26 U.S.C.A. § 902(b).

In view of this action of Congress and the longstanding construction of the Act by the Department whose duty it was to enforce it, it is clear that Congress intended to tax transfers or deliveries to and from trustees of an express trust. United States v. Alexander, 79 U.S. 177, 181, 12 Wall. 177, 181, 20 L.Ed. 381. The Congress could have exempted transfers to or from a fiduciary had it so elected but, not having done so, courts are not at liberty to insert them in the statute. The permanent right to vote the stock of a corporation is one of importance and value and the Congress, prompted by every sense of justice, could have levied a tax when this right was taken from one and given to another.

■ There is a substantial difference between a trustee and a proxy. The latter is an agent who represents and acts for his principal who is bound by what is done in the discharge of that agency. A trustee is not an agent, but a person in whom there is vested, for the benefit of another, some estate, interest, or power in or affecting property. A trustee contracts for and binds only himself as he has no principal.

■ The method of transferring title to shares of corporate stock is a subject of importance but, unless a particular mode of transfer is prescribed by statute or in the corporate charter or by-laws, the owner may dispose of his shares in such manner as would be sufficient to pass title to any chose in action or intangible property.

■ Stock certificates are assignable and pass by indorsement or delivery as do bills of exchange and promissory notes. A stockholder's rights or his passing of title to them are not determinable conclusively or exclusively by the provisions of his certificate of stock, but title may pass by evidences in writing other than an indorsement on the certificate or transfer on the books. Continental Insurance Company v. Minneapolis Railroad Company, 8 Cir., 290 F. 87, 31 A.L.R. 1320. The execution by the stockholders of the two voting trusts here involved pursuant to the Ohio Statutes, passed title and all indicia of ownership· to the trustees, without indorsement on the certificates or transfer on the corporate records.

The appellant, by transferring the shares of stock in question into the respective voting trusts, created a legal interest which falls clearly within the Federal Taxing Statutes. It therefore follows that the taxes were properly assessed and collected by the United States. Judgment of the District Court is affirmed.