BIRMINGHAM, Collector of Internal Revenue, v. CENTRAL LIFE ASSUR. SOC. (MUTUAL).

No. 12622.

Circuit Court of Appeals, Eighth Circuit.

March 8, 1944.

Irving J. Axelrod, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Maryhelen Wigle, Sp. Assts. to the Atty. Gen., Maurice F. Donegan, U. S. Atty., of Davenport, Iowa, Cloid I. Level, Asst. U. S. Atty., of Des Moines, Iowa, and William R. Sheridan, Asst. U. S. Atty., of Keokuk, Iowa, on the brief), for appellant.

Donald Evans, of Des Moines, Iowa (William F. Riley and Ehlers English, both of Des Moines, Iowa, on the brief), for appellee.

Before STONE, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is an action by Central Life Assurance Society, an insurance company incorporated under the laws of Iowa, against E. H. Birmingham, as Collector of Internal Revenue for the District of Iowa, to recover documentary stamp taxes assessed against the company by the Commissioner of Internal Revenue for the years 1937 to October 6, 1941, inclusive, in the amount of $6,798.41 with interest. The taxes were paid under protest, and a claim for refund was denied. Judgment was. entered for the company and the Collector appeals. Central Life Assur. Soc. v. Birmingham, D.C., Iowa, 48 F.Supp. 863.

The taxes were imposed under § 3480 of the Internal Revenue Code and under § 3481 as amended by § 1 of the Revenue Act of 1939 and by §§ 504 and 521(a) (23) and (b) of the Revenue Act of 1941, 26 U.S.C.A. Int.Rev.Code, §§ 3480 and 3481, upon the company's deposits of bonds with the Insurance Commissioner of Iowa, made pursuant to the provisions of § 8655 and other pertinent sections of the Code of Iowa of 1939.

The trial court held that the statute imposes the tax upon the delivery or transfer of the legal title of bonds or securities; that the delivery of the bonds, as required by the statutes of Iowa, to the insurance commissioner made him a custodian only and did not transfer the legal title to him in trust or otherwise; and that the deposit was not, therefore, taxable under § 3481.

The Collector contends (1) that the documentary stamp tax is assessable upon the mere physical delivery of the bonds, and, in the alternative, (2) that the deposits were taxable under the federal statute as a "transfer in trust."

We are called upon to determine only whether the delivery of bonds by an Iowa insurance company to the Iowa insurance commissioner in compliance with the requirement of the Iowa statutes comes within the taxing provision of the federal statute. We are not required to define every condition which must attend the delivery of bonds to render the delivery taxable. Our first inquiry must, therefore, be in regard to the legal relation between the company and the commissioner resulting under Iowa law from the delivery and receipt of the bonds. Morgan v. Commissioner, 309 U.S. 78, 80, 81, 60 S.Ct. 424, 84 L.Ed. 585. Whether a taxable event occurred may then be decided.

Section 8653 of the Code of Iowa of 1939 provides that by the first day of March in each year every Iowa insurance company must file in the office of the insurance commissioner a statement showing the number of policies issued during the preceding year ending on December thirty-first, the total amount of the risk, and all other information necessary to enable the commissioner correctly to estimate the cash value of the policies. Section 8654 provides that the commissioner shall then ascertain the net cash value of every policy in force, and

"Section 8655. *Deposit to cover valuation—policy loan agreements.* The net cash value of all policies in force in any such company being ascertained, the commissioner shall notify it of the amount, and within thirty days thereafter the officers thereof shall deposit with the commissioner the amount of the ascertained valuation in the securities specified in section 8737."

"Section 8663. *Securities.* The securities of a defaulting or insolvent company, or a company against which proceedings are pending under sections 8661 and 8662

[for receivership], on deposit shall vest in the state for the benefit of the policies on which such deposits were made, and the proceeds of the same shall, by order of the court upon final hearing, be divided among the holders thereof in the proportion of the last annual valuation of the same, or at any time be applied to the purchase of reinsurance for their benefit."

Section 8664 provides that the companies shall have the right to change the securities at any time by substituting a like amount of the character required in the first instance; and § 8665 provides that companies not in default may collect the dividends or interest on all deposited securities.

 This court had occasion to consider the legal relations between an Iowa insurance company and the commissioner and the legal status of deposited securities under the statute in the case of American United Life Ins. Co. v. Fischer, 8 Cir., 130 F.2d 643, 646. The court there said, referring to the Iowa statutes, supra, "The statutory provisions * * * must be held to create, as a matter of state policy, protective lien or trust rights in favor of such policy holders in the deposited securities. * * * Under the statute, title to the securities remains in the company until one of the three contingencies specified [default, insolvency, or receivership proceedings] occurs, with the right on its part, during such period, to collect the interest or dividends and to make substitutions of securities * * *." We adhere to the view there expressed.

Since in the present case the plaintiff company is not and was not at any time in default, insolvent, or involved in a receivership proceeding the legal title to the deposited securities has been in the company and has at no time passed to or vested in the commissioner. The statutory "protective lien or trust rights in favor of [the] policy holders" created by the deposit did not involve the transfer of the legal title. A mere lien created by law does not have such an effect. Tobin v. Insurance Agency Co., 8 Cir., 80 F.2d 241, 243. The fact that the legal title is not transferred by such a lien is what distinguishes it from an assignment, Springer v. J. R. Clark Co., 8 Cir., 138 F.2d 722, 726; and it was stipulated in this case that no contractual assignment was made.

We now turn to the consideration of the question whether the delivery of bonds by an insurance company to the Iowa insurance commissioner is taxable under the federal statute. By § 3481 of the Code the tax is imposed "On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the instruments mentioned or described in section 1801 and of a kind the issue of which is taxable thereunder, whether made by any assignment in blank or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale * * *."

The transaction does not involve a sale, an agreement to sell, a memorandum of sale, or a delivery or transfer of legal title to the securities deposited. The purpose or intent with which the delivery was made must, therefore, be considered; for it is inconceivable that Congress intended to tax under this section every delivery of bonds, except those enumerated in the provisos, under all circumstances, without regard to the purpose, the intent, or the jural relations of the parties. The single fact that A delivers bonds to B is insufficient to enable either the Commissioner of Internal Revenue or the court to determine whether or not such delivery is taxable under the statute. Some intent or purpose is necessary to give meaning to the delivery. That the Treasury Department so considers the matter is shown by Treasury Regulations 71, 26 CFR, 1941 Supp., § 113.60, which reads:

"Scope of Tax.—Section 3481 imposes a tax upon sales of, agreements to sell, and memoranda of sales of, bonds; *on deliveries of bonds with intent to pass title;* and on transfers of legal title to bonds, and instruments assigning interests in bonds. The tax applies to the specified dealings or transactions in bonds, whether effected by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of sale or transfer, and without regard to whether the holder or transferee of the bond is entitled to any beneficial interest therein. The tax accrues at the time of making the sale or agreement to sell or memorandum of sale, or delivery of, or transfer of the legal title to, the bonds, regardless of the time or manner of the delivery of the bonds or agreement or memorandum of sale." (Italics supplied.)

 To be taxable under § 3481 within the meaning of the regulation, the delivery

of bonds must at least be "with intent to pass title." This is a reasonable construction of the statute, and no reason appears why it should not be applicable in this case. Nothing in the statute or the regulations points to a contrary conclusion. The argument of the Collector that mere physical delivery of bonds is taxable is inconsistent with the regulation.

The Collector contends, however, that the provisos of the statute evidence the purpose of Congress to impose the tax upon *every* delivery of bonds not thereby exempted. The first proviso exempts deposits of bonds as collateral security; the second, deliveries in connection with reorganizations; the third, deliveries to a broker for sale, and the fourth, deliveries or transfers from a fiduciary to a nominee. His theory is that the exemptions of these designated classes carry with them the meaning that the tax does apply to all other deliveries for whatever purpose made. It will be noted that these exemptions all apply to transactions in which title does not pass by delivery. The rule of construction invoked does not compel the conclusion that mere physical delivery is taxable regardless of the purpose of such delivery. The provisos can not be construed to require the inclusion of what the plain meaning of the statute and the regulation excludes.

 It is urged further that the provisions of the statute are to be interpreted broadly; that they evidence an intent of Congress to tax every transaction within the reach of their terms; and that those terms are not to be narrowed by technical requirements, citing Raybestos-Manhattan Co. v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111; Founders General Corp. v. Hoey, 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639, and like cases. It is true that the reach of a taxing act whose purpose is obvious "is not to be restricted by technical refinements" [296 U.S. 60, 56 S.Ct. 65, 80 L.Ed. 44, 102 A.L.R. 111], or narrowed by technical requirements. It is also true that "a taxing statute, if of doubtful intent, should be construed favorably to the taxpayer." McFeely v. Commissioner, 296 U.S. 102, 111, 56 S.Ct. 54, 58, 80 L.Ed. 83, 101 A.L.R. 304. "Such statutes are not to be extended by implication beyond the clear import of the language used." Crooks v. Harrelson, 282 U.S. 55, 61, 51 S.Ct. 49, 51, 75 L.Ed. 156; Reinecke v. Gardner, 277 U.S. 239, 244, 48 S.Ct. 472,

72 L.Ed. 866. The statute can not be construed to include transactions not clearly within the intent of Congress. In the present case an intent to transfer the legal title to the securities to the insurance commissioner is absent. The facts stipulated and the law permit no other inference. The transaction can not, therefore, be said to come within the purview of the statute.

In urging that it is "the deposit itself, which is the taxable act under the federal revenue law", the Collector argues "that stamp taxes are excises upon the *use* of the enumerated documents or facilities *employed* in the transaction, separate and apart from the transaction itself, and irrespective of its purpose." Conceding that Congress has power to impose an excise tax upon any defined *use* of documents irrespective of the purpose of the transaction, it is sufficient to observe that Congress has not undertaken in § 3481 to impose a tax upon a mere "escrow" or "custodial" arrangement in which "intent to pass title" is wholly lacking. The language of the statute and of the regulation, supra, both negative such an attempted exercise of power.

We have carefully examined the authorities cited by the parties, and we find none of them controlling. In support of his contention that a mere delivery, and by inference that every delivery, of bonds is taxable the Collector cites Occidental Life Ins. Co. v. Rogan, D.C.Cal., 48 F.Supp. 231; Hollister v. United States, D.C. Wash., 38 F.Supp. 7; Cliffs Corp. v. United States, 6 Cir., 103 F.2d 77; Dupont v. United States, 300 U.S. 150, 57 S.Ct. 391, 81 L.Ed. 570; Provost v. United States, 269 U.S. 443, 46 S.Ct. 152, 70 L.Ed. 352; and others. In each instance the case is distinguishable on the facts, and the excerpts quoted in the brief are either dicta or do not apply. The taxpayer has cited such cases as Provost v. United States, supra; Orpheum Bldg. Co. v. Anglim, 9 Cir., 127 F.2d 478; State Street Trust Co. v. Hassett, 1 Cir., 134 F. 2d 156; City Bank Farmers Trust Co. v. Hoey, 2 Cir., 125 F.2d 577; Shreveport-El Dorado Pipe Line Co. v. McGrawl, 5 Cir., 63 F.2d 202; Goodyear Co. v. United States, 273 U.S. 100, 47 S.Ct. 263, 71 L.Ed. 558. These cases, although distinguishable, tend to support the conclusion we have reached.

 In the alternative the Collector contends that the bonds deposited with the Iowa insurance commissioner if not taxable

on the basis of delivery alone, are taxable under the statute as a "transfer in trust." This contention is predicated upon Article 34 of Treasury Regulations 71 (1932 Ed.), 26 CFR § 111.34, which provides that "(b) The transfer of stock to or by trustees" is subject to tax. Article 120 (26 CFR § 111.120) makes the provisions of Article 34 relating to sales or transfers of stock applicable to sales and transfers of bonds.

The regulation does not define the term "trustee", and it, therefore, must be understood in its "natural and most obvious import" to denote one who holds the legal title to property for the benefit of another. Cliffs Corp. v. United States, 6 Cir., 103 F.2d 77, 80. It follows that no trust is created by the deposit whereby the legal title vested in the insurance commissioner. Neither is the commissioner a "trustee" within the obvious meaning of the regulation. The "trust rights" of the policyholders referred to in the Fischer case, supra, relate to their statutory rights against the insurance commissioner as official statutory custodian of the securities deposited with him. The commissioner owes the same duty to the company that he owes to the policyholders, that is, to keep possession of the securities for the purposes defined in the Iowa statute. He acquires from the company no right, title or interest in the deposited securities themselves. His function is to keep them available, on the one hand, to the company for exchange and substitution and for collecting the income from them, and, on the other hand, to the court in the event of default, insolvency or receivership of the company.

To support his contention the Collector can not depend upon the requirements of the Iowa statutes in respect of securities held for the protection of the policyholders of a foreign corporation. Those requirements are not the same as the requirements for an insurance company organized under the laws of Iowa. In the case of a foreign company doing business in Iowa, § 8652 of the Code of Iowa of 1939 requires the proper officer of the state under whose laws the company is organized to furnish the Iowa insurance commissioner a certificate, "under his official seal, that he as such officer holds *in trust and on deposit for the benefit of all the policyholders* of such company, the securities above mentioned." (Italics supplied.) This statute does not apply to Iowa companies, and,

therefore, does not sustain the contention that the commissioner holds the securities of an Iowa company as a trustee. This fact distinguishes the present case from Occidental Life Ins. Co. v. Rogan, supra, relied upon by the Collector.

For the foregoing reasons the judgment appealed from is affirmed.